| CIVIL ACTION COVER SHEET | DOCKET NO.(S) This is the Docket NO. | Trial Court of Massachusetts Superior Court Department County: _____ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Bradford C. Councilman | Alibris, Inc.; Michael Warchut; Peter Krotkov |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if Known) |
|---|---|
| Andrew Good, Good & Cormier<br>83 Atlantic Ave, Boston MA 02110<br>Board of Bar Overseers number: 201240    617/523-5933 | |

## Original code and track designation

Place an x in one box only:

☐ 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231,s.104
☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c. 231, s. 97 & 104 (after trial) (X)
☐ 5. F05 Reactivated after rescript; relief from judgement/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) TRACK | IS THIS A JURY CASE? |
|---|---|---|
| B99 Malic. Prosecution, etc. | (F) | (X) YES    ( ) NO |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A.    Documented medical expenses to date:        See Attached
    1.    Total hospital expenses                                            $ _____
    2.    Total Doctor expenses                                           $ _____
    3.    Total chiropractic expenses                                   $ _____
    4.    Total physical therapy expenses                          $ _____
    5.    Total other expenses (describe)                            $ _____
                     Subtotal    $ _____
B.    Documented lost wages and compensation to date        $ _____
C.    Documented property damages to date                          $ _____
D.    Reasonably anticipated future medical and hospital expenses    $ _____
E.    Reasonably anticipated lost wages                               $ _____
F.    Other documented items of damages (describe)            $ _____

G.    Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                   $ _____
                             TOTAL    $ _____

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                             TOTAL    $ _____

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 7/9/04

AOTC-6 mtc005-11/99
a.o.s.c. 1-2000

CIVIL ACTION
COVER SHEET

## ATTACHMENT

### *ALL MONETARY FIGURES APPROXIMATE*

\*\*\*

B.  Documented lost wages and compensation to date          $300,000.00

\*\*\*

E.  Reasonably anticipated lost wages                        $2,000,000.00
F.  Other documented items of damages (describe)             $200,000.00
      *Plaintiff has incurred approximately $200,000*
      *in legal fees defending against the criminal*
      *case generated by defendants' torts.*

G.  Brief description of plaintiff's injury, including nature and
    extent of injury (describe)
      *As a direct result of defendants' torts, plaintiff was*
      *fired from a job paying him $94,000/year in base*
      *salary, incurred approximately $200,000 in legal*
      *fees, has been unable to obtain employment, and has*
      *suffered substantial, permanent reputational injury*
      *which will significantly reduce future earning*
      *potential, if any.*

                           **TOTAL**     **$2,500,000.00**

COMMONWEALTH OF
MASSACHUSETTS
HAMPSHIRE, SS.

SUPERIOR COURT
DOCKET NUMBER:
HSCV2004-00161-A

---

BRADFORD C. COUNCILMAN,

Plaintiff,

v.

ALIBRIS, INC.
MICHAEL WARCHUT
PETER KROTKOV

Defendants.

**COMPLAINT**

PLAINTIFF DEMANDS
TRIAL BY JURY FOR ALL
ISSUES SO TRIABLE

---

Plaintiff Bradford C. Councilman ("Councilman"), by and through his undersigned attorneys, for his Complaint against Alibris, Inc. ("Alibris"), Michael Warchut ("Warchut") and Peter Krotkov ("Krotkov"), avers:

## NATURE OF THE ACTION

1.     This action seeks redress for a scheme by Alibris and two individuals to falsely implicate Councilman in connection with a federal criminal investigation. Defendants wrongfully scapegoated Councilman in order to save themselves from criminal liability and financial harm. Defendants caused Councilman to become indicted by a federal grand jury. Having suffered nearly three years of oppressive anxiety, depression and expense, Councilman has been exonerated. He now seeks compensation from defendants, whose conduct constitutes malicious prosecution, abuse of process, intentional infliction of emotional distress, and a set of unfair and deceptive trade practices.

## JURISDICTION AND VENUE

2.     This court has subject-matter jurisdiction over Councilman's claims pursuant to M.G.L. ch. 212 § 4 and M.G.L. ch. 93A § 9.

3.     This court has personal jurisdiction over defendants Alibris and Warchut pursuant to M.G.L. ch. 223A § 3(c).

4.     This court has personal jurisdiction over defendant Krotkov pursuant to M.G.L. ch. 223A § 2.

5.    Venue is proper in this county pursuant to M.G.L. ch. 223 § 1.

## THE PARTIES

6.    Plaintiff Councilman was a co-founder of Interloc, Inc. ("Interloc"), a business corporation organized under the laws of Washington state with its principal place of business in Greenfield, Massachusetts. In May, 1998, Interloc merged with and became Alibris. Councilman was a vice-president of Alibris from May, 1998 until he was fired on or about October 21, 1999. Councilman resides in New Hampshire.

7.    Defendant Alibris is a business corporation organized under the laws of California, with its principal place of business in Emeryville, California. Alibris is successor in interest to Interloc.

8.    Defendant Warchut is employed as a systems administrator for Alibris. Warchut was a systems administrator for Interloc from 1996 until Interloc merged with and became Alibris in May, 1998. Warchut resides in California.

9.    Defendant Krotkov is a systems administrator for the University of Massachusetts Amherst ("UMass"). In January, 1998, Krotkov was employed as a systems administrator for Interloc. Krotkov resides in Hampshire County, Massachusetts.

## ALLEGATIONS OF FACT

### A.    Interloc and Alibris

10.    In late 1993, Councilman co-founded Interloc with partners Tom Sawyer ("Sawyer") and Richard Weatherford ("Weatherford"). Interloc was an online matching and listing service for rare and out-of-print book dealers. Interloc also provided electronic communication services as an internet service provider (ISP) to its subscribers. Councilman oversaw operations at Interloc's Greenfield, Massachusetts data center.

11.    In addition to its online matching and listing service for used and rare book dealers, Interloc operated an Internet Service Provider ("ISP") called Valinet for subscribers who were members of the general public. Valinet provided internet connectivity to customers in the Greenfield, Massachusetts area. Valinet and Interloc both operated out of the Greenfield, Massachusetts data center.

12.    In May, 1998, Interloc merged with and became Alibris.

13.    Currently, Alibris is a company which connects through the Internet buyers and sellers of new, used and rare books, music and movies.

- 2 -

**B.     The Studio 32 Hack**

14.    In March, 1998, Studio 32 was a software development company located in San Francisco, California.

15.    In March, 1998, Interloc contracted with Studio 32 to design Interloc/Alibris' website and create new database servers.

16.    Warchut learned that Interloc management had contracted with an outside company – Studio 32 – to perform computer-related tasks for Interloc. At the time, Warchut was Interloc's computer systems administrator.

17.    In late March, 1998, Warchut obtained unauthorized access to password-protected and confidential data stored in Studio 32's computer system by exploiting a vulnerability in Studio 32's operating system.

18.    Warchut did not have permission from Studio 32 to access password-protected, confidential data stored in Studio 32's computer system.

19.    Warchut told Councilman that he had obtained access to confidential data stored in Studio 32's computer system without a password, and that the data was accessible to the general public. Warchut did not tell Councilman the truth – that Warchut had obtained unauthorized access to password-protected, confidential data stored in Studio 32's computer system by exploiting a vulnerability in Studio 32's operating system.

20.    Councilman had no reason to believe that Warchut had obtained access to Studio 32's computer system without authorization and in violation of federal law. Based on what Warchut had told him, Councilman believed that confidential data stored in Studio 32's computers was publicly accessible without a password.

21.    Based on what Warchut told him, Councilman believed that Studio 32 had a security problem which could compromise Studio 32's ability to satisfactorily perform its contractual duties for Interloc/Alibris.

22.    Councilman instructed Warchut to revisit the Studio 32 system in order to confirm Councilman's understanding that Studio 32 had left its entire system open to public access.

23.    For the second time, Warchut obtained access to password-protected confidential data stored in Studio 32's computer system by exploiting a vulnerability in Studio 32's operating system (the "Studio 32 Hack").

- 3 -

24. Warchut did not have Studio 32's authorization to access password-protected, confidential data stored in the Studio 32 system in this fashion.

25. In early April, 1998, Studio 32 management learned that Warchut had gained unauthorized access to its computer system.

26. Studio 32 management told Interloc/Alibris management that it believed that the Studio 32 Hack was illegal.

27. Warchut feared criminal prosecution in connection with the Studio 32 Hack.

## C. The Shaysnet Hack

28. In April, 1998, Shaysnet, Inc. ("Shaysnet") was an ISP in Greenfield, Massachusetts. Shaysnet and Valinet were competitors. David Leonard ("Leonard") was the Director of Shaysnet.

29. On or about April 10, 1998, Leonard contacted Massachusetts State Trooper _____ ("Barrett"). Leonard told Trooper Barrett that an unknown individual had obtained unauthorized access to a Shaysnet computer several times during the previous week (the "Shaysnet Hack"). During the hacker attacks, some Shaysnet files were destroyed. The Shaysnet password file had been stolen. Leonard reported that he had spent in excess of 100 hours repairing the damage.

30. Based on his conversation with Leonard, Trooper Barrett began investigating the Shaysnet Hack on or about April 10, 1998.

### 1. Trooper Barrett's Investigation Leads to Krotkov and Warchut

31. Trooper Barrett discovered that the Shaysnet Hack had been perpetrated from a computer account at UMass with the username "HD".

32. Trooper Barrett learned that somebody had entered the "HD" account, then used the "HD" account to perpetrate the Shaysnet Hack.

33. Trooper Barrett learned that the person who entered the "HD" account did so from a UMass account with the username "CHUT".

34. Trooper Barrett determined that the person who used the "CHUT" account to enter the "HD" account in order to perpetrate the Shaysnet Hack had done so from a computer on the premises of Valinet.

35. Trooper Barrett learned that the "CHUT" account had been established by defendant Krotkov for defendant Warchut.

- 4 -

36.  Trooper Barrett interviewed defendant Krotkov about Krotkov's possible involvement in the Shaysnet Hack.

37.  Krotkov admitted that he had set up the "CIJUT" account for his friend Warchut.

38.  Krotkov had given his friend Warchut access to a copy of the UMass password file. Warchut used this UMass password file to enter the "HD" account in order to perpetrate the Shaysnet Hack.

39.  Krotkov did not have permission to give the UMass password file to anyone outside of UMass for any purpose. Krotkov's superiors, including an Associate Chancellor at UMass, verified that Krotkov did not have permission to give Warchut the UMass password file.

40.  At the time of the Shaysnet Hack, Krotkov was a systems administrator at UMass; Warchut held a similar position at Interloc/Valinet. Krotkov and Warchut had been friends since at least 1995, when they worked together at UMass. After Warchut left UMass to work for Interloc/Valinet, Warchut attempted to get his friend Krotkov to leave UMass to work for Interloc/Valinet. Krotkov and Warchut corresponded with each other about personal, computer and business matters both before and after the Shaysnet Hack.

41.  After Krotkov told Trooper Barrett that Krotkov had created for Warchut the UMass account used to perpetrate the Shaysnet Hack, Krotkov and Warchut communicated with each other.

42.  Both Krotkov and Warchut understood that Trooper Barrett was investigating them in connection with their respective roles in the Shaysnet Hack.

## 2.  Krotkov and Warchut Believed That They Were in Trouble for the Shaysnet Hack

43.  Krotkov feared that he would lose his job at UMass if his superiors found out that he had given Warchut the UMass password file.

44.  Warchut feared that he would lose his job and possibly be prosecuted for criminal acts if he was found to have been responsible for the Shaysnet Hack.

45.  Although Trooper Barrett initiated the Shaysnet Hack investigation in early April, 1998, by the following month a team of Federal Bureau of Investigation ("FBI") agents, headed by Special Agent Ronald Yearwood ("S.A. Yearwood") was involved.

46.  In early June, 1998, Trooper Barrett, accompanied by a twelve-member team of FBI agents and Massachusetts State Troopers, executed a federal search warrant on the premises of Interloc/Valinet.

- 5 -

47.    Warchut was on the premises of Interloc/Valinet during the execution of the search warrant.

48.    Federal law enforcement agents interviewed Warchut at the time of and after the execution of the Interloc/Valinet search warrant.

49.    Federal law enforcement agents asked Warchut whether Warchut had any "hacker" programs on his computer – that is, computer programs used to facilitate unauthorized access to another computer system.

50.    Warchut admitted that he had more than one "hacker" program on his Interloc/Valinet computer.

51.    Warchut admitted that he had a copy of the UMass password file, which Krotkov had given him, on his Interloc/Valinet computer.

52.    A federal grand jury was convened in connection with the Warchut/Alibris/ investigation.

53.    Warchut and Krotkov feared federal criminal prosecution for their respective roles in the Shaysnet Hack.

54.    Warchut also feared federal criminal prosecution for his role in the Studio 32 Hack.

## D.    **Warchut and Krotkov Scapegoat Councilman**

55.    Warchut and Krotkov decided to attempt to persuade federal law enforcement authorities to not prosecute them, or to give them favorable treatment, if Warchut and Krotkov provided false evidence of criminal conduct involving a higher-ranking Interloc official.

56.    As of the time of the Shaysnet Hack, as between Weatherford, Sawyer and Councilman, only Councilman worked at the Greenfield, Massachusetts data center full-time.

57.    Warchut had worked with Councilman in the Greenfield, Massachusetts data center for approximately two years prior to the Shaysnet Hack. Krotkov had worked there with Councilman and Warchut for approximately one week in January, 1998.

58.    In concocting their false evidence, Warchut and Krotkov seized on that one week. That was the only time Warchut and Krotkov both worked with Councilman in the Interloc/Valinet office.

59.    Warchut and Krotkov invented a false accusation implicating Councilman in a scheme to illegally intercept emails sent by Amazon.com through Interloc/Valinet e-mail servers to Interloc customers.

- 6 -

60.   To divert the federal criminal investigation away from their involvement in the Shaysnet Hack, Warchut and Krotkov told investigators that, during that one week in early January, 1998, Councilman had ordered them to write a computer script to intercept and copy Amazon.com emails.

61.   This story was false. Warchut and Krotkov knew it was false.

62.   Based on the false Warchut-Krotkov story, Trooper Barrett's investigation, which initially focused only on the Shaysnet Hack, broadened to include Councilman's possible role in a scheme to intercept Amazon.com emails.

63.   Warchut and Krotkov's false Amazon.com story initiated the federal criminal investigation of Councilman.

64.   Warchut and Krotkov knew or should have known that concocting the false Amazon.com story and telling it to a law enforcement agent would initiate a criminal investigation and prosecution of Councilman.

65.   Krotkov repeated the false Amazon.com story to federal investigators more than once during the federal criminal investigation, from mid-1998 through mid-2001.

66.   Warchut repeated the false Amazon.com story to federal investigators more than once during the federal criminal investigation, from mid-1998 through mid-2001.

67.   On or about March 15, 2000, Warchut entered into a plea agreement with the Government. In consideration for reduced charges and a favorable sentencing recommendation, Warchut agreed to fully cooperate with the Government's investigation and prosecution of Councilman.

68.   Warchut was not charged with any crime in connection with his perpetration of the Shaysnet Hack – either his hack into the UMass system or the Shaysnet Hack itself. Warchut was not charged with any crime in connection with his perpetration of the Studio 32 Hack.

69.   Krotkov was never charged with any crime whatsoever in connection with any aspect of this investigation.

70.   Warchut was not fired by Alibris, nor was he subjected to any adverse employment consequences.

71.   Krotkov was not fired as a UMass employee.

72.   On or about May 9, 2001, Krotkov testified before the federal grand jury investigating Councilman.

- 7 -

73.  Krotkov falsely testified that Councilman had directed him to write a script to intercept Amazon.com emails.

74.  Krotkov's false grand jury testimony was a proximate cause of the indictment of Councilman.

75.  Krotkov knew or should have known that his false grand jury testimony would help cause the indictment of Councilman.

76.  On or about May 30, 2001, Warchut testified before the federal grand jury in connection with the federal criminal investigation of Councilman.

77.  Warchut understood that his guilty plea and sentencing hearings were scheduled to occur after his grand jury testimony.

78.  Warchut understood that a condition of the government's sentencing recommendation at his impending sentencing hearing was Warchut's provision of testimony implicating Councilman as a participant in the Amazon.com interception scheme and the Studio 32 Hack.

79.  Warchut falsely testified that Councilman had directed him to write a script to intercept Amazon.com emails.

80.  Warchut misleadingly testified that Councilman had directed him to perpetrate the second Studio 32 Hack. Warchut's testimony was misleading because Warchut failed to mention that, based on what Warchut had told him, Councilman believed that Warchut could gain authorized access to the Studio 32 computer system without a password. Warchut failed to tell either Councilman or the grand jury that Warchut had obtained access to the Studio 32 computer system by exploiting a data security vulnerability in the Studio 32 operating system.

81.  Warchut's false and misleading grand jury testimony was a proximate cause of the indictment of Councilman.

82.  Warchut knew or should have known that his false and misleading grand jury testimony would help cause the indictment of Councilman.

83.  On or about May 31, 2000, pursuant to his plea agreement, Warchut pled guilty in the United States District Court for the District of Massachusetts to a one-count information charging him with conspiracy to violate laws prohibiting interception of electronic messages.

84.  On or about October 19, 2000, Warchut was sentenced by Judge Ponsor in the United States District Court for the District of Massachusetts. The government filed a motion,

- 8 -

pursuant to Section 5K.1 of the United States Sentencing Guidelines, indicating that Warchut had provided the government with substantial assistance in its investigation of Councilman and freeing the Court to make an independent sentencing decision.

85. The guideline sentencing range for Warchut's conduct was ten-to-sixteen months imprisonment and a $3,000 - $30,000 fine. After the government made the section 5K.1 motion, Judge Ponsor placed Warchut on probation for two years (with six months of home detention) and fined him $2,100.

## E. **Alibris Scapegoats Councilman**

86. Between the Studio 32 Hack (early April, 1998) and the execution of the federal search warrant at the Alibris/Interloc data center (early June, 1998), Interloc merged with and became Alibris.

87. Alibris was successor in interest to Interloc.

88.  ⋅ ⋅ ⋅ 1¢ purpose of the merger was to significantly expand the business's market share and profitability.

89. Given the company's focus – books – the Alibris management team considered it important to maintain a positive relationship with Amazon.com and a public image would permit Alibris to raise venture capital.

90. On or about June 8, 1998, the Alibris management team learned that it was being investigated by federal law enforcement authorities for the subject-matter of the Warchut-Krotkov false story – that is, that Councilman had directed Warchut and Krotkov to illegally intercept Amazon.com emails intended for Interloc customers.

91. Alibris management believed that the company's prospects would be substantially influenced by the outcome of the criminal investigation.

92. At the time that federal and state agents executed the search warrant at the Greenfield, Massachusetts data center, Alibris was preparing for a meeting with Amazon.com to discuss their business relationship. Alibris wanted to re-structure its relationship with Amazon.com in such a way as to make Amazon.com Alibris' largest customer, or to be acquired by Amazon.com. The federal criminal investigation presented an obstacle to these prospects.

93. During the summer of 1998, Alibris was developing a plan to raise capital for its expanding operations. The federal criminal investigation presented an obstacle to this plan.

- 9 -

94.  Alibris management understood that, by the summer of 1998, Councilman and his alleged involvement in the Studio 32 Hack and the scheme to intercept Amazon.com emails had become a subject matter of the federal investigation.

95.  In late July, 1998, Alibris management asked Councilman to resign from the Alibris Board of Directors. Alibris retained Warchut as a systems administrator.

96.  Alibris management believed that it was in the company's best interest to cooperate with the federal investigation.

97.  Alibris understood that the more it cooperated with the federal investigation, the less severe its criminal liability and penalty would be.

98.  On or about October 21, 1999, Alibris management fired Councilman.

99.  On or about November 29, 1999, Alibris agreed to waive indictment and plead guilty to charges in connection with a scheme to illegally intercept Amazon.com emails and illegally obtain and retain unauthorized copies of confidential and proprietary password files and customer lists of certain competitors.

100.  As consideration for the Government's promise to recommend a sentence reduction and enter a joint sentence recommendation, Alibris promised to cooperate fully with the Government's ongoing investigation of Councilman.

101.  Alibris was not charged with any crime in connection with the Shaysnet Hack or the Studio 32 Hack.

102.  No individual member of Alibris' management team or Board of Directors was charged with any crime.

103.  By the time Councilman was indicted, Alibris had already fired him.

104.  In the course of cooperation, Alibris management assisted Warchut in falsely implicating Councilman in connection with a scheme to illegally intercept Amazon.com emails. Alibris knew and/or recklessly failed to learn that Councilman did not direct either Warchut or Krotkov to illegally intercept Amazon.com emails. Alibris knew and/or recklessly failed to learn that, in the course of the investigation, Warchut and Krotkov told multiple inconsistent versions of the false story they concocted.

105.  In the course of cooperation, Alibris management falsely implicated Councilman in connection with the Studio 32 Hack. Alibris knew and/or recklessly failed to learn that

- 10 -

Councilman did not direct Warchut to illegally obtain access password-protected, confidential data stored in the Studio 32 computers.

106. Alibris' false implication of Councilman in connection with the Amazon.com scheme and the Studio 32 Hack, and Alibris' assistance to Warchut was a proximate cause of the indictment of Councilman.

107. Alibris knew or should have known that its assistance to, and cooperation with, Warchut and the federal investigation would help cause the indictment of Councilman.

E.    **Councilman Indicted; Councilman Exonerated**

108. On July 11, 2001, Councilman was indicted on two counts: (1) 18 U.S.C. § 371 conspiracy to violate 18 U.S.C. § 2511 et seq. (illegal interception of the Amazon.com emails) and (2) 18 U.S.C. § 371 conspiracy to violate 18 U.S.C. § 1030 et seq. (the Studio 32 hack).

109. On February 12, 2003, Judge Ponsor dismissed Count I (the Amazon.com interception). The Government appealed to the United States Court of Appeals for the First Circuit.

110. June 16, 2003, the Government voluntarily dismissed Count II of the indictment (the Studio 32 hack).

111. On June 29, 2004, the First Circuit affirmed Judge Ponsor's dismissal of Count I.

**COUNT I**
**(Malicious Prosecution)**
**(Against Alibris, Warchut and Krotkov)**

112. Paragraphs 1 through 111 are incorporated herein by reference.

113. Alibris, Warchut and Krotkov instituted criminal process against Councilman with malice, in that each defendant knew there was no probable cause for the prosecution, and each acted with an improper motive.

114. There was no probable cause to initiate criminal process against Councilman.

115. The resulting criminal proceeding terminated in favor of Councilman.

116. At all times material to this Count, Warchut was an employee of Alibris.

117. Warchut's conduct occurred within the scope of his employment at Alibris.

118. As such, Alibris is directly and vicariously liable for the malicious prosecution of Councilman.

119. As a result of defendants' conduct, Councilman has suffered substantial emotional, psychological and financial damages.

- 11 -

## COUNT II
### (Abuse of Process)
### (Against Alibris, Warchut and Krotkov)

120. Paragraphs 1 through 119 are incorporated herein by reference.

121. Alibris, Warchut and Krotkov used process for an ulterior and/or illegitimate purpose, resulting in damage to Councilman.

122. Defendants used process in that their cooperation with the Government and grand jury testimony subjected Councilman to indictment.

123. Defendants used process for an ulterior and/or illegitimate purpose in that each defendant falsely implicated Councilman in order to avoid criminal punishment and financial harm.

124. At all times material to this Count, Warchut was an employee of Alibris.

125. Warchut's conduct occurred within the scope of his employment at Alibris.

126. As such, Alibris is directly and vicariously liable for the abuse of process against Councilman.

127. As a result of defendants' conduct, Councilman has suffered substantial emotional, psychological and financial damages.

## COUNT III
### (Intentional Infliction of Emotional Distress)
### (Against Alibris, Warchut and Krotkov)

128. Paragraphs 1 through 127 are incorporated herein by reference.

129. Alibris, Warchut and Krotkov intended to inflict emotional distress and/or knew or should have known that emotional distress was the likely result of their above-described conduct.

130. Defendants' false implication of an innocent man in connection with a federal criminal investigation is extreme and outrageous, beyond all possible bounds of decency and is utterly intolerable in a civilized community.

131. As a result of defendants' conduct, Councilman sustained emotional distress.

132. The emotional distress sustained by Councilman was severe and of a nature that no reasonable man could be expected to endure it.

133. At all times material to this Count, Warchut was an employee of Alibris.

134. Warchut's conduct occurred within the scope of his employment at Alibris.

- 12 -

135. As such, Alibris is directly and vicariously liable for the intentional infliction of emotional distress upon Councilman.

## COUNT IV
### (Violation of M.G.L. ch. 93A)
### (Against Alibris)

136. Paragraphs 1 through 135 are incorporated herein by reference.

137. The malicious prosecution, abuse of process and intentional infliction of emotional distress for which Alibris is directly and vicariously liable constitutes an unfair and/or deceptive act or practice.

138. This unfair and/or deceptive act or practice occurred in the conduct of trade or commerce, in that Alibris' conduct both related to a pre-existing business relationship and/or was motivated, at least in part, by a desire to influence an external marketplace. The external marketplace includes, but is not limited to, Amazon.com and the venture capital industry.

139. The unfair and/or deceptive act or practice occurred primarily and substantially in Massachusetts against Councilman, who was a Massachusetts citizen.

140. Alibris violated M.G.L. ch. 93A § 2. The violation was willful and/or knowing.

141. As a result of defendants' conduct, Councilman has suffered substantial emotional, psychological and financial damages.

142. More than thirty days prior to filing this action, Councilman mailed a written demand for relief to Alibris, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered. Alibris rejected Councilman's demand for relief.

## PRAYER FOR RELIEF

WHEREFORE, Councilman respectfully requests the following relief:

I.    That Councilman be awarded his actual damages in an amount to be proved at trial, trebled pursuant to M.G.L. ch. 93A § 9(3), as well as reasonable attorneys' fees and costs pursuant to M.G.L. ch. 93A § 9(3A).

II.   That the Court award such further and other relief as it deems just and proper.

- 13 -

Dated:  July 9, 2004

Respectfully submitted,

Andrew Good
BBO # 201240

Matthew Zsow
BBO # 658726
GOOD & CORMIER
83 Atlantic Avenue
Boston, MA 02110
Tel. (617) 523-5933
Fax (617) 523-7554

*Attorneys for Plaintiff*

G:\CLIENTS\Councilman (civil)\Complaint.doc

- 14 -

2

COMMONWEALTH OF MASSACHUSETTS
HAMPSHIRE, SS.

Superior Court Department of the
Trial Court of the Commonwealth
Civil Action

No.

HSCV2004-00161A

BRADFORD C. COUNCILMAN,

, Plaintiff (s)

SUMMONS

v.

ALIBRIS, INC.
MICHAEL WARCHUT
PETER KROTKOV

, Defendant (s)

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant  :

You are hereby summoned and required to serve upon    Andrew  Good, Esq.  ,
plaintiff's attorney, whose address is    83 Atlantic Ave, Boston MA 02110    ,
an answer to the complaint which is herewith served upon you, within 20 days after service of
this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.  You are also
required to file your answer to the complaint in the office of the Clerk of this court at
Northampton, either before service upon plaintiff's attorney or within a reasonable time
thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any
claim which you may have against the plaintiff   which arises out of the transaction or occurrence
that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such
claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire at Northampton, the    20th
day of      September                          , in the year of our Lord two thousand 4 .

*Harry Jekanawski Jr.*

CLERK-MAGISTRATE

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. Circle type of action involved.  Tort — Motor Vehicle Tort — Contract - Equitable relief.

## RETURN OF SERVICE

I hereby certify that on September 21, 2004, I caused copies of the summons and complaint in this case to be served upon Alibris, 1250 45th St. Suite 100, Emeryville CA 94608 by certified mail return receipt requested numbered 7003 1010 0002 8274 9208. On September 27, 2004, I received from the United States Postal Service a receipt certifying that the package containing the summons and complaint was delivered to Alibris on September 24, 2004. Copies of the certified mailer and the certified receipt are below.

September 27, 2004                                    Andrew Good

**SENDER** COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Martin Manley
Alibris
1250 45th St. Suite 100
Emeryville CA 94608

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☑ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7003 1010 0002 8274 9208

PS Form 3811, August 2001        Domestic Return Receipt        2ACPRI-00-P-4061

**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To   Martin ecy
          manley/bris
Street, Apt No.;   St.
or PO Box No.   emeryville CA
City, State

PS Form 3800, June 2002        See Reverse for Instructions

7003 1010 0002 8274 9208

3

COMMONWEALTH OF MASSACHUSETTS
HAMPSHIRE, SS.

Superior Court Department of the
Trial Court of the Commonwealth
Civil Action 04 161

No.

HSCV2004-00161A

BRADFORD C. COUNCILMAN

, Plaintiff (s)

v.

SUMMONS

ALIBRIS, INC.
MICHAEL WARCHUT
PETER KROTKOV

, Defendant (s)

NOTICE TO DEFENDANT – You need not appear personally in court to answer the complaint but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant   :

    You are hereby summoned and required to serve upon   Andrew Good, Esq. , plaintiff 's attorney, whose address is 83 Atlantic Ave, Boston MA 02110, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Northampton, either before service upon plaintiff 's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff   which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    Witness, Suzanne V. DelVecchio, Esquire at Northampton, the   20th day of   September   , in the year of our Lord two thousand   4.

*Harry Jekanowski, Jr.*

CLERK-MAGISTRATE

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. Circle type of action involved. Tort – Motor Vehicle Tort – Contract – Equitable relief.

4

04 161

4.

COMMONWEALTH OF MASSACHUSETTS
HAMPSHIRE, SS.

Superior Court Department of the
Trial Court of the Commonwealth
Civil Action

No.    HSCV2004-00161A

BRADFORD C. COUNCILMAN

, Plaintiff (s)

v.

SUMMONS

ALIBRIS, INC.
MICHAEL WARCHUT
PETER KROTKOV

, Defendant (s)

HAMPSHIRE SUPERIOR CRT
HARRY JEKANOWSKI JR
CLERK

2004 SEP 30 A 8: 51

To the above-named Defendant    :

    You are hereby summoned and required to serve upon    Andrew Good, Esq.    ,
plaintiff ' s attorney, whose address is    83 Atlantic Ave, Boston MA 02110    ,
an answer to the complaint which is herewith served upon you, within 20 days after service of
this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.  You are also
required to file your answer to the complaint in the office of the Clerk of this court at
Northampton, either before service upon plaintiff ' s  attorney or within a reasonable time
thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any
claim which you may have against the plaintiff    which arises out of the transaction or occurrence
that is the subject matter of the plaintiff' s claim or you will thereafter be barred from making such
claim in any other action.

    Witness, Suzanne V. DelVecchio, Esquire at Northampton, the    20th
day of    September    , in the year of our Lord two thousand  4 .

*Harry Jekanowski Jr.*

CLERK-MAGISTRATE

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. Circle type of action involved.  Tort – Motor Vehicle Tort – Contract – Equitable relief.

.OOF OF SERVICE OF PROCESS

HAMPSHIRE SS                                                            S&C  L&U

I hereby certify and return that on *September 23*, 20 *04*, I served a copy of the
within summons, together with a copy of the complaint in this action upon the within named defendant,
*PETER NAOTKOV* by leaving at his/her last and usual place of abode to wit:
*84 MEADOW STREET AMHERST, MA 01002*

Fees:
Service: $ *20.00*
Copy: *2.00*
Travel: *9.60*
M.V.: *3.30*
Attest: *5.00*
Total:
*$ 39.90*

_____    DAVID R. KNIGHTLY, DEPUTY SHERIFF
Deputy Sheriff

Dated:                          , 20        .    _____

N.B.  TO PROCESS SERVER:–

PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON
THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

|  |
|---|
| , 20        . |

Commonwealth of Massachusetts
HAMPSHIRE, ss.      SUPERIOR COURT
CIVIL ACTION
No.

Plff.

v.

Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

5

## AFFIDAVIT OF PETER KROTKOV

I, Peter Krotkov, hereby depose and state as follows:

1.    I understand, based on information and belief, that I have been named as a defendant in a case captioned Bradford C. Councilman v. Alibris, Inc., Michael Warchut and Peter Krotkov ("Councilman Matter"), filed on or around July 12, 2004 in the Superior Court in Hampshire County, Massachusetts.

2.    I further understand, based on information and belief, that a return of service was filed with the Hampshire County Superior Court, showing that I purportedly was served with a summons and complaint in the Councilman Matter on September 22, 2004, by Deputy Sheriff David R. Knightly leaving a copy of the summons and complaint at 124 Meadow Street, Amherst, MA 00002, alleged to be my last and usual place of abode.

3.    I do not reside at 124 Meadow Street in Amherst Massachusetts. I ceased to reside at 124 Meadow Street in Amherst, Massachusetts sometime in 1998.

4.    I never received the summons and complaint left at 124 Meadow Street, Amherst, Massachusetts.

5.    My present and usual place of abode is 101 North Plain Road in Sunderland, Massachusetts, where I live with my family. I have lived at 101 North Plain Road in Sunderland since sometime in the Spring of 2001.

6.    I have not been served in hand with a copy of the summons and complaint.

Signed under the penalties of perjury this  21st  day of October, 2004.

_____
Peter Krotkov

6

**County of Hampshire**
**The Superior Court**

CIVIL DOCKET# **HSCV2004-00161-A**

RE:  **Councilman v Alibris, Inc et al**

TO:Andrew Good, Esquire
    83 Atlantic Avenue
    Boston, MA 02110

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 10/10/2004 |
| Response to the complaint filed (also see MRCP 12) | 12/09/2004 |
| All motions under MRCP 12, 19, and 20 filed | 12/09/2004 |
| All motions under MRCP 15 filed | 12/09/2004 |
| All discovery requests and depositions completed | 05/08/2005 |
| All motions under MRCP 56 served and heard | 06/07/2005 |
| Final pre-trial conference held and firm trial date set | 07/07/2005 |
| Case disposed | 09/05/2005 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session **A** sitting in **CtRm 2- 3rd fl at Hampshire Superior Court.**

Dated: 07/12/2004

Harry Jekanowski, Jr.
Clerk of the Courts

Location: CtRm 2- 3rd fl
Telephone: (413) 584-5810 ext. 287

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 254617 inkloc01 shopantp

COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.

Superior Court Department
of the Trial Court
Civil Action No. 04-161

BRADFORD C. COUNCILMAN,                )
                  Plaintiff       )
                            )
v.                                     )
                            )    NOTICE OF APPEARANCE
ALIBRIS, INC.,                         )
MICHAEL WARCHUT,                       )
PETER KROTKOV,                         )
                Defendants      )

       Please enter my appearance as counsel for the defendant Alibris, Inc. in the above-entitled case.

Dated: October 12, 2004

                               Katherine A. Robertson
                               BBO No. 557609
                               Bulkley, Richardson and Gelinas, LLP
                               1500 Main Street, Suite 2700
                               Springfield, MA  01115-5507
                               Tel:  (413) 781-2820
                               Fax:  (413) 272-6804

Certificate of Service

       I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on October 12, 2004.

                               Katherine A. Robertson

#28065

COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.

Superior Court Department
of the Trial Court
Civil Action No. 04-161

BRADFORD C. COUNCILMAN,            )
               Plaintiff            )
                            )
v.                                 )            ASSENTED-TO MOTION TO
                            )            EXTEND TIME TO ANSWER
ALIBRIS, INC.,                     )            OR RESPOND TO COMPLAINT
MICHAEL WARCHUT,                   )
PETER KROTKOV,                     )
               Defendants           )



With the assent of the plaintiff, Bradford C. Councilman ("Councilman"), defendants

Alibris, Inc. ("Alibris") and Michael Warchut ("Warchut"), hereby move the Court to extend the

time for them to answer or otherwise respond to the complaint in this action until thirty days

after Councilman provides notice to Alibris and Warchut of a ruling by the United States Court

of Appeals for the First Circuit in the case of *United States v. Bradford C. Councilman*, No. 03-

1383. As grounds for this motion, Alibris and Warchut state as follows:

      1.     On or around July 11, 2001, Councilman was indicted by the federal government

on two counts: (1) under 18 U.S.C. § 371, conspiracy to violate 18 U.S.C. § 2511 et seq.; and (2)

under 18 U.S.C.§ 371, conspiracy to violate 18 U.S.C. § 1030 et seq. Councilman commenced

this action on or around July 9, 2004. Alibris and Warchut were served with the complaint on or

around September 24, 2004. In summary, the complaint alleged that the defendants falsely

implicated Councilman in connection with a criminal investigation by the federal government.

      2.     In this complaint, Councilman brought claims against the defendants of malicious

prosecution (Count I) and abuse of process (Count II). In connection with these claims,

Councilman alleged that prior proceedings terminated in his favor because, on June 16, 2003, the

government dismissed Count II against him and, on June 29, 2004, the First Circuit affirmed dismissal of Count I against him.

3.    On October 5, 2004, the First Circuit voted to rehear en banc the matter of *United States v. Councilman.* The Court vacated the judgment entered on June 29, 2004 dismissing Count I of the indictment against Councilman.

4.    Based on the First Circuit's allowance of the government's petition for rehearing en banc, Councilman has agreed that the time for Alibris and Warchut to answer or otherwise respond to the allegations in the complaint should be extended until thirty (30) days after Councilman's attorney notifies Alibris and Warchut of the First Circuit's ruling in the pending matter of *United States v. Councilman,* No. 03-1383.

5.    Alibris and Warchut will report to the Court on the status of this matter when the First Circuit issues its ruling in *United States v. Councilman* or on April 1, 2005, whichever is earlier.

6.    For the foregoing reasons, defendants Alibris and Warchut respectfully request that this motion be granted and that the time for them to answer or otherwise respond to Councilman's complaint be extended to thirty days after Alibris and Warchut receive notice from

Councilman's attorney of a ruling by the First Circuit on whether the indictment against

Councilman will be dismissed.

Assented to:                                          Respectfully submitted,

The Plaintiff,                                         The Defendant,
BRADFORD C. COUNCILMAN                                 ALIBRIS, INC.
By His Attorneys:                                      By Its Attorney:

_Andrew Good / KAR_                                    _Katherine Robertson_
Andrew Good – BBO No. 201240                           Katherine A. Robertson
Matthew Zisow – BBO No. 658726                          BBO No. 557609
Good & Cormier                                         Bulkley, Richardson and Gelinas, LLP
83 Atlantic Avenue                                     1500 Main Street, Suite 2700
Boston, MA 02110                                       Springfield, MA 01115-5507
Tel. (617) 523-5933                                    Tel: (413) 781-2820
Fax (617) 523-7554                                     Fax: (413) 272-6804

Dated: October 12, 2004

Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorney of
record for each party by mail on October 12, 2004.

_Katherine Robertson_
Katherine A. Robertson

#280632