UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30208-MAP

BRADFORD C. COUNCILMAN,    )
            Plaintiff    )
v.                    )
                    )    MEMORANDUM IN SUPPORT OF
                    )    ALIBRIS' MOTION TO DISMISS
ALIBRIS, INC.,          )    PLAINTIFF'S COMPLAINT
MICHAEL WARCHUT,      )
PETER KROTKOV,        )
            Defendants    )

## I.     Introduction

In his complaint, plaintiff Bradford C. Councilman ("Plaintiff") asserts four counts against defendant Alibris, Inc. ("Alibris"): (1) Malicious Prosecution; (2) Abuse of Process; (3) Intentional Infliction of Emotional Distress; and (4) Alleged Violations of the Massachusetts Consumer Protection Statute, M.G.L. c. 93A. On counts one through three, plaintiff asserts that Alibris is directly liable for its own actions and vicariously liable for the actions of defendant Michael Warchut. Alibris hereby moves for dismissal of all counts against Alibris under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The grounds for this motion are set forth below.

## II.     Allegations in Complaint and Relevant Background

Plaintiff co-founded Interloc, Inc. ("Interloc"), an online matching and listing service for rare and out-of-print book dealers. Interloc merged with Alibris in May 1998. Complaint ¶¶ 10, 12. Thereafter, Alibris employed plaintiff as a vice-president and he was a member of Alibris' Board of Directors. Complaint ¶¶ 6, 12. Defendant Michael Warchut ("Warchut") was Interloc's systems administrator from 1996 to May 1998, and became a systems administrator for Alibris after Interloc and Alibris merged. Complaint ¶ 8. Defendant Peter Krotkov ("Krotkov") worked for Interloc prior to the merger for the period of a single week in January 1998. Complaint ¶ 57.

At all other pertinent times, Krotkov was employed by the University of Massachusetts ("UMass"). Complaint ¶¶ 9, 40.

Plaintiff alleges that Warchut obtained unauthorized access to password-protected data stored in the computer system of Studio 32, a software development company ("Studio 32 Hack"), and that, in April 1998, Warchut, with Krotkov's assistance, obtained unauthorized access to the computers of an internet service provider, Shaysnet ("Shaysnet Hack"). Complaint ¶¶ 14-17, 29, 31-41. During the Shaysnet Hack, some Shaysnet files were destroyed and the Shaysnet password file was stolen. Complaint ¶ 29.

As a result of the Shaysnet Hack, state troopers began an investigation on April 10, 1998. Federal investigators became involved the following month. Complaint ¶¶ 30, 45. Plaintiff alleges that, during the course of the investigation, beginning in mid-1998, Warchut and Krotkov, in return for favorable treatment by authorities for their own involvement in the Studio 32 and Shaysnet Hacks, made false allegations implicating plaintiff in the Studio 32 Hack and a scheme to illegally intercept electronic mail ("e-mail") sent by Amazon.com through Interloc e-mail servers to Interloc customers. Complaint ¶¶ 55, 59, 65-66. Investigators thereafter broadened their investigation to include Councilman. Complaint ¶¶ 60-62.

Alibris did not become aware of the criminal investigation until June 8, 1998, a few weeks after the Alibris-Interloc merger. Complaint ¶ 90, 94. Thereafter, Alibris cooperated in the investigation. Complaint ¶ 100. Alibris management asked Councilman to resign from the Board of Directors in late July 1998, and terminated plaintiff's employment on October 21, 1999. Complaint ¶¶ 95, 98. On November 29, 1999, Alibris pled guilty to charges related to the illegal interception of Amazon.com e-mail and paid a fine in the amount of $250,000. Complaint ¶¶ 99-100; *see also* Information and Judgment in a Criminal Case. (A copy of the Information and

Judgment in a Criminal Case is attached hereto as Exhibit A.)[1]  Warchut pled guilty to one count of

conspiracy to violate laws prohibiting interception of electronic messages and was sentenced to two

years' probation (with six months of home detention) and fined $2,100.  Complaint ¶¶ 83-85.

Plaintiff alleges that Krotkov and Warchut falsely testified to the grand jury on May 9, 2001 and

May 30, 2001, respectively.  Complaint ¶¶ 72-76.

On July 11, 2001, plaintiff was indicted by the United States government on two counts.  (A

copy of the indictment is attached hereto as Exhibit B.)  The first count alleged illegal interception

of Amazon.com e-mails and charged plaintiff under 18 U.S.C. §371 for conspiracy to violate 18

U.S.C. §2511 *et seq*. (the "federal Wiretap Act").  Exhibit B, pp. 1-7; Complaint ¶ 108.  The second

count related to the Studio 32 Hack and charged plaintiff under 18 U.S.C. §371 for conspiracy to

violate 18 U.S.C. §1030 *et seq.* (the "Computer Fraud and Abuse Act").  Exhibit B, pp. 8-10;

Complaint ¶ 108.  This Court dismissed count one on February 12, 2003, on the basis that the

communications at issue were in electronic storage and, therefore, not intercepted in transit as

required to prove a violation of the federal Wiretap Act.  Complaint ¶ 109; *see also United States v.*

*Councilman,* 245 F. Supp.2d 319, 320-321 (D. Mass. 2003).  The First Circuit affirmed the

dismissal of count one on June 29, 2004.  Complaint ¶ 111; *see also United States v. Councilman,*

373 F.3d 197, 200-204 (1st Cir. 2004).  Prosecutors voluntarily dismissed count two of the

indictment on June 16, 2003, citing "recent developments in the relevant case law."  Complaint ¶

110; June 5, 2003 Dismissal of Count Two of the Indictment, attached hereto as Exhibit C.  On

October 5, 2004, the United States Court of Appeals allowed the government's petition for

rehearing *en banc* in connection with the dismissal of count one of the indictment.  The First

Circuit has not yet issued its decision in connection with the government's motion for rehearing.

---

[1] On a motion to dismiss, a court may consider matters incorporated into the complaint by reference, items subject to judicial notice, matters subject to public record, items in the records of the Court, and exhibits to the Complaint.  *See, e.g., Boateng v. InterAmerican Univ., Inc*., 210 F.3d 56, 60 (1st Cir.), *cert den.* 531 U.S. 904  (2000).

### III.    Argument

#### A.    Motion to Dismiss Standard

"The appropriate inquiry on a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)] is whether, based on the allegations of the complaint, the plaintiff[] [is] entitled to offer evidence in support of [his] claims." *Eggert v. Merrimac Paper Co., Inc. Leveraged Employee Stock Ownership Plan and Trust*, 311 F. Supp.2d 245, 247-248 (D. Mass. 2004).  In "reviewing a ... motion [to dismiss under Rule 12(b)(6)], a court is generally required to (1) treat all of the non-movant's factual allegations as true and (2) draw all reasonable factual inferences that arise from the allegations and are favorable to the non-movant." *Eggert,* 311 F. Supp.2d at 247-248*, quoting Burchill v. Unumprovident Corp.,* 2003 WL 21524730, *1 (D. Me., June 27, 2003).  If it appears from the face of the complaint that the plaintiff can prove no set of facts that would entitle him to relief, the court should dismiss the plaintiff's claims.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  To survive a motion to dismiss, a complaint must assert facts that, if true, establish the asserted cause of action.  *Municipal Light Co. of Ashburnham v. Com*., 34 Mass. App. Ct. 162, 166 (1993).  The Court is not bound by legal conclusions, unsupported factual conclusions, or unwarranted inferences, nor need the Court "swallow a plaintiff's invective hook, line and sinker." *See Eastern Food Services, Inc. v. Pontifical Catholic University Services Ass'n, Inc*., 357 F.3d 1, 9 (1st Cir. 2004); *Massachusetts School of Law at Andover v. American Bar Ass'n*, 142 F.3d 26, 40 (1st Cir. 1998).

#### B.    Plaintiff's Claim Against Alibris For Malicious Prosecution Must be Dismissed

Plaintiff's claim against Alibris for malicious prosecution must be dismissed because plaintiff has not adequately alleged requisite elements of the claim.  A malicious prosecution claim must be based on allegations that a prior legal proceeding was:  (1) brought by the defendant; (2)

commenced maliciously; (3) without probable cause, and (4) terminated in the plaintiff's favor. *Wynne v. Rosen*, 391 Mass. 797, 798-799 (1984); *Sklar v. Beth Israel Deaconess Medical Center*, 59 Mass. App. Ct. 550, 557-558 (2003), *rev. denied,* 440 Mass. 1110 (2003). Actions for malicious prosecution are not favored in Massachusetts. *Wynne*, 391 Mass. at 801. Taking as true all of plaintiff's allegations, those allegations cannot support claims of malicious prosecution against Alibris on either direct or vicarious liability grounds because plaintiff fails to show initiation of a prior legal proceeding brought by the defendants or that the prior proceeding terminated in his favor.

Plaintiff alleges, in summary, that:

Alibris learned of the investigation of Councilman, which began on or about April 10, 1998, on or about June 8, 1998 and believed the company's prospects would be substantially influenced by the outcome of the investigation, such that Alibris believed it was in the company's best interest to cooperate in the federal investigation, which it did in consideration of the Government's promise to recommend a sentence reduction. Complaint ¶¶ 29, 90, 91, 94, 96, 100.

Plaintiff further alleges, in conclusory terms, that:

Alibris knew and/or recklessly failed to learn that Councilman did not direct either Warchut or Krotkov to illegally intercept Amazon.com e-mails and that Councilman did not direct the Studio 32 Hack; Alibris knew and/or recklessly failed to learn that Warchut and Krotkov had told multiple inconsistent versions of their false story and Alibris knew or should have known that its cooperation in the federal investigation would help cause Councilman's indictment. Complaint ¶¶ 104-107.

1.    **Alibris Cannot Be Vicariously Liable for Warchut's Actions Because Warchut's Actions Were Not Taken in the Course and Scope of His Employment With Alibris**

Even taking the allegations against Warchut as true solely for purposes of this motion, Alibris cannot be liable for his actions. An employer can be vicariously liable for the acts of its employees only when the "conduct of an agent is within the scope of employment, [meaning that] it is of the kind he is employed to perform . . . it occurs substantially within the authorized time and space limits . . . and it is motivated, at least in part, by a purpose to serve the employer." *Wang*

*Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859 (1987). Plaintiff has the burden of proving that Warchut was acting within the scope of his employment. *See Kelly v. Middlesex Corp.*, 35 Mass. App. Ct. 30, 32 (1993), *rev. denied,* 416 Mass. 1104 (1993).[2] If solely personal interests drive an employee's acts, the employee is acting outside the scope of his employment. *See Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 567 (1996) (summary judgment for employer on false imprisonment claim because rape and sexual assault by manager was not authorized or directed by employer and did not further the employer's interests); *Schlichte v. Granite Sav. Bank*, 40 Mass. App. Ct. 179, 182 (1996) (bank not vicariously liable for tortious actions of an employee who misused authority granted her by a depositor to withdraw funds from depositor's account because withdrawals were "neither part of her job nor intended in any respect to benefit the bank").

Plaintiff has alleged that Alibris should be vicariously liable to plaintiff for malicious prosecution based on the allegation that Warchut lied when he claimed that plaintiff ordered the interception and copying of Amazon.com e-mails and lied about plaintiff's role in the Studio 32 Hack. Complaint, ¶¶ 59-63, 79-80, 104. The complaint alleges that Warchut made his allegedly false statements to ensure his own favorable treatment, **not** to benefit Alibris. Complaint ¶¶ 43-44, 53-55. It was not pled and it cannot reasonably be inferred that any false accusations by Warchut against plaintiff, who was a director and officer of Alibris, could in any way have served Alibris' interests. To the contrary, as a result of Warchut's actions, Alibris pled guilty to criminal charges and paid a $250,000 fine. Complaint ¶¶ 83-85, 99; *see also* Information and Judgment, attached hereto as Exhibit A. Furthermore, the alleged acts by Warchut about which plaintiff complains—his cooperation with investigators and his testimony before a grand jury—were not acts within the scope of Warchut's duties as a systems administrator. Alibris cannot be vicariously

---

[2] Plaintiff does not, and could not, allege that Alibris should be held vicariously liable for any act by Krotkov. Complaint, ¶¶ 112-135. None of Krotkov's alleged misconduct occurred while he was employed by Alibris. Complaint, ¶¶ 12, 29, 30, 40, 57, 60, 65.

liable for acts by an employee that were "not part of [his] job" for Alibris. *Schlichte,* 40 Mass. App. Ct. at 182.

Because Warchut's alleged misconduct occurred outside of the scope of his employment by Interloc or Alibris, any claim for malicious prosecution against Alibris based on vicarious liability for Warchut's actions must be dismissed.

### 2.    Neither Alibris Nor Warchut Initiated an Action Against Plaintiff

Under Massachusetts law, providing information to law enforcement officers in a criminal investigation that is already underway does not constitute the initiation of a prosecution. *See Correllas v. Viveiros*, 410 Mass. 314, 318-319 (1991) (bank teller in a larceny did not "institute" criminal proceedings against a co-worker by providing allegedly false information to police while she was a suspect in a theft already under investigation). In the *Correllas* case, a bank discovered that $8,000 was missing from its vault and reported the theft. During the investigation, the defendant failed a polygraph examination and subsequently confessed to stealing $4,000. She told police, and testified at trial, that the plaintiff had developed the plan to steal the money and that she believed the plaintiff had stolen the additional $4,000. The plaintiff was acquitted of larceny charges. She then brought an action against the defendant on several counts, including malicious prosecution and intentional infliction of emotional distress. The court affirmed summary judgment for the defendant on all counts, holding that, with regard to the claim of malicious prosecution, the undisputed evidence showed that the defendant did not institute the criminal proceedings against plaintiff because the defendant merely provided information to the police while she was a suspect in an investigation that was already underway, even though she lied in doing so. *See Correllas,* 410 Mass. at 318-319.

Here, plaintiff has not even alleged that Alibris lied to investigators. Reading the complaint's allegations in the light most favorable to plaintiff, plaintiff has alleged only that Alibris

cooperated with an investigation already underway by the time Alibris learned of it, and that Alibris knew and/or recklessly failed to learn that statements by Warchut and Krotkov were false and failed to exonerate Warchut. Under Massachusetts law, this does not constitute the initiation of proceedings and cannot support a malicious prosecution claim against Alibris.[3] In fact, even if Warchut lied and caused the indictment of plaintiff, the *Corellas* case provides that this sequence of events would **not** constitute the initiation of proceedings by Warchut against plaintiff. Where Warchut cannot be held directly liable for his acts, Alibris cannot be vicariously liable for those acts.

### 3.    The Underlying Prosecution Has Not Terminated in Plaintiff's Favor

Finally, plaintiff cannot show that the underlying proceedings against him have terminated in his favor in the manner required to support a malicious prosecution claim against Alibris. A criminal prosecution terminates in a plaintiff's favor when the district attorney formally abandons the criminal proceedings by a *nolle prosequi* [i.e. a formal record entry by the prosecuting attorney declaring there will be no further prosecution] or a motion to dismiss or by a factual finding of innocence or no liability. *See Wynne*, 391 Mass. at 800-801. However, "the reasons stated for the *nolle prosequi* or dismissal must be consistent with the innocence of the accused." *Id.* The circumstances of the abandonment must compel an inference that there existed a lack of reasonable grounds to prosecute. A criminal prosecution terminated by dismissal on the basis of a procedural or technical defect does not suffice as a final and favorable termination. *Id.*

Here, plaintiff alleges that he was "exonerated" and that the counts against him were dismissed in his favor. Complaint, ¶¶ 108-111, 115. The dismissals, however, were granted on

---

[3] Indeed, allowing a malicious prosecution claim to proceed in such circumstances would contravene public policy. It is considered the duty of every member of society to see that crime is punished, *see Wingersky v. E.E. Gray Co.*, 254 Mass. 198, 201 (1926), and it is the public policy of this Commonwealth to encourage cooperation with ongoing criminal investigations. *See Flesner v. Technical Communications Corp.* 410 Mass. 805, 810 (1991).

technical legal grounds, not because plaintiff did not, in fact, commit the acts alleged in the

indictment.  The indictment alleged that on or about January 1998, plaintiff directed Interloc

employees to write computer code to intercept and copy all incoming communications from

Amazon.com to Interloc book sellers for the purposes of exploiting the content of the Amazon.com

e-mail for commercial advantage.  Count one of the indictment charged plaintiff with conspiracy to

violate the federal Wiretap Act.  Plaintiff moved to dismiss count one on the basis that there had

not been an "intercept" of a communication within the meaning of the federal Wiretap Act.

Specifically, plaintiff argued, and this Court agreed, that the computer code Warchut wrote

captured the Amazon.com e-mails while those e-mails were in electronic storage, not in transit and

that, as a matter of law, e-mails in storage could not be "intercepted" under the federal Wiretap Act.

*See United States v. Councilman,* 245 F. Supp.2d at 320-321.  The United States Court of Appeals

for the First Circuit, while stating that "the language [of the federal Wiretap Act] may be out of step

with the technological realities of computer crimes," affirmed this Court's dismissal of count one,

agreeing that the e-mail was in electronic storage, even if it had not reached the intended recipient,

and could not be "intercepted" as that term was defined in the federal Wiretap Act.  *See United

States v. Councilman,* 373 F.3d at 203-204.

Dismissal of count one of the indictment, on the grounds that the e-mails were in storage at

the time they were captured, did not exonerate plaintiff of the allegation that he had participated in

a scheme to read e-mails sent by Amazon.com to Interloc customers for commercial advantage.

Dismissal of the indictment against plaintiff was on technical grounds and not because prosecutors

lacked any factual basis to proceed against plaintiff in the first place.  Similarly, count two related

to the Studio 32 Hack and charged Plaintiff under 18 U.S.C. §371 for conspiracy to violate 18

U.S.C. §1030 *et seq.*  See Complaint, ¶ 108 and Exhibit A at pp. 8-10.  While prosecutors

voluntarily dismissed this count on June 5, 2003, the dismissal stated only that count two was being

dismissed "[i]n light of recent developments in relevant case law."  See June 5, 2003 Dismissal,

attached hereto as Exhibit C.  Again, the dismissal was not based on the conclusion that plaintiff

was factually innocent of the allegations against him.  For this reason also, plaintiff's claim for

malicious prosecution must be dismissed. [4]

### 4.    The Actions Underlying Plaintiff's Malicious Prosecution Claim Were Privileged and Cannot Support Plaintiff's Claim

Even if plaintiff had pled facts adequate to show initiation of proceeding by Alibris and

their termination in his favor, which he has not, plaintiff's claim would fail because he bases his

claims on alleged actions of the defendants that were absolutely privileged.  In this case, the basis

for plaintiff's malicious prosecution claim against Alibris is Alibris' cooperation with criminal

investigators and Alibris' failure to exonerate plaintiff when Alibris allegedly knew or recklessly

failed to learn that Warchut and Krotkov's allegations against plaintiff were false.  Statements

made before trial to police or prosecutors in the course of a criminal investigation or judicial

proceedings are absolutely privileged, even if they are intentionally false or uttered with malice or

in bad faith.  *See Correllas*, 410 Mass. at 319; *Seelig v. Harvard*, 355 Mass. 532, 538 (1969).  An

absolute privilege is applied in these cases for reasons of public policy, including the fact that any

final judgment may depend largely on the testimony of a party or witness who should not be

hampered by fear of an action against him.  *Correllas*, 410 Mass. at 319; *Sullivan v. Birmingham*,

11 Mass. App. Ct. 359, 366-367 (1981); s*ee also Sriberg v. Raymond*, 544 F.2d 15, 16 (1st Cir.

1977) (interpreting Massachusetts law).  Plaintiff cannot base claims against Alibris on acts that

were protected by privilege.  *See Correllas*, 410 Mass. at 324-325 (tort claims cannot be based on a

---

[4] In this case, there is an additional reason that the proceedings have not terminated in plaintiff's favor.  The United States Court of Appeals for the First Circuit allowed the federal government's motion for re-hearing *en banc* of the dismissal of Count I of the indictment against plaintiff.  If the First Circuit, sitting *en banc*, reverses the District Court's dismissal of Count I of the indictment, there may be further proceedings against plaintiff.  For this reason also, the proceedings have not terminated in plaintiff's favor.  *See, e.g., Bacon v. Waters*, 84 Mass. 400, 401-402 (1861) (prosecution against a party cannot be said to be at an end until the indictment found by the grand jury is finally disposed of.)

defendant's privileged conduct). "A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort." *Id*. Plaintiff cannot base a malicious prosecution claim against Alibris based on Alibris' privileged cooperation with authorities in a criminal investigation. In addition, Warchut's cooperation with investigators is protected by privilege and Warchut cannot be directly liable for that cooperation. Alibris cannot be vicariously liable for acts by Warchut that are protected by privilege. For these reasons also, the plaintiff's malicious prosecution claim should be dismissed.

### C.    Plaintiff's Claim of Abuse of Process Against Alibris Must Be Dismissed

Plaintiff's abuse of process claim against Alibris is subject to dismissal because the claim was not timely filed and because plaintiff has again failed adequately to allege essential elements of the claim.

#### 1.    Plaintiff's Abuse of Process Claim Against Alibris Was Not Timely Filed

Massachusetts General Laws, ch. 260, §2A, the statute of limitations for tort actions, provides, in pertinent part, as follows: "[A]ctions of tort . . . shall be commenced only within three years next after the cause of action accrues." This action was commenced on July 3, 2004. The abuse of process complained of must, therefore, have occurred on or after July 3, 2001.

In *Britton v. Thompson*, 1999 WL 1318995 (Mass. Super. 1999), the only Massachusetts case to address the time at which an abuse of process claim accrues, the defendant filed larceny charges against the plaintiff. This one act was the sole basis for the plaintiff's abuse of process claim and the court stated that "an action for abuse of process accrues on the date the prior proceeding was filed." *Britton v. Thompson*, 1999 WL 1318995 at *3. Here, however, plaintiff does not base his abuse of process claim against the defendants on the filing of charges (in fact, none of the defendants filed any charges), but on their cooperation with investigators. Plaintiff specifically alleges that Warchut "initiated the federal criminal investigation" of plaintiff and

"instituted criminal process" by telling his allegedly "false Amazon.com story" to investigators beginning in mid-1998. Complaint, ¶¶ 63, 65-66, 113. Massachusetts courts have never addressed the accrual time for an abuse of process claim in this context. Other jurisdictions have done so, and have held that a claim for abuse of process accrues on the date of the last act that constitutes the abuse about which a plaintiff complains. In *Brooks v. Harding*, 2001 WL 548098, *5 (S.D. Ind. 2001), for example, the court noted that "[a] cause of action for abuse of process under Indiana law accrues when the act complained of is committed" and that, in this regard, the plaintiff is "stuck with what he has pled" in his complaint. In *Penn v. Iowa State Board of Regents*, 577 N.W.2d 393, 400 (1998), the court held that plaintiff's abuse of process claim was untimely because he brought his action more than two years after his accuser committed her last alleged act constituting abuse of process, which was her testimony at a hearing subsequent to the filing of a complaint.

Here, the last act by Alibris about which plaintiff complains is Alibris' guilty plea on November 29, 1999. Complaint ¶ 99. The last act by **any** defendant about which plaintiff complains is the grand jury testimony given by Krotkov and Warchut on May 9 and May 30, 2001, respectively. Complaint ¶¶ 72-76. Based on the allegations in his complaint, plaintiff should have brought any abuse of process action against Alibris by November 29, 2002 (three years from the date of Alibris' guilty plea). At the latest, plaintiff should have brought his claims by May 30, 2004 (three years from Warchut's grand jury testimony). Plaintiff did not commence this action until July 3, 2004. Plaintiff's claim for abuse of process was not timely filed and should be dismissed for this reason.

### 2.    Plaintiff Has Not Adequately Alleged the Elements of An Abuse of Process Claim

Abuse of process and malicious prosecution are similar claims. *See Goff v. MacDonald*, 333 Mass. 146, 151 (1955). Plaintiff's abuse of process claim fails for reasons similar to those that defeat his malicious prosecution claim. Malicious prosecution arises when civil or criminal

prosecution is brought maliciously and without probable cause, whereas abuse of process is the improper use of legal process for a purpose for which it was not intended, even when legal process issued properly in the first instance.  The elements of an abuse of process claim are:  (1) the use of "process" (including the initiation of criminal charges); (2) either for an ulterior or illegitimate purpose or maliciously; (3) resulting in damage.  *See Gutierrez v. Massachusetts Bay Transp. Authority,* 437 Mass. 396, 407 (2002); *Jones v. Brockton Public Markets, Inc*. 369 Mass. 387, 389 (1975); *Shaw v. Fulton*, 266 Mass. 189, 191 (1929).

Plaintiff's abuse of process claim against Alibris fails for the same reasons that his malicious prosecution claim fails.  In summary, plaintiff has not alleged that Alibris used process against him, or that Krotkov or Warchut used process against him. Cooperation with authorities is not the use of process and any such cooperation by Alibris, or by Warchut, is privileged.  Alibris cannot be vicariously liable for acts by Warchut for which Warchut cannot be held liable.  Further, Alibris cannot be vicariously liable to plaintiff for any alleged abuse of process by Warchut because, for the reasons set forth above, it cannot be inferred that Warchut was acting within the scope of his employment.

### D.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Should be Dismissed

"[O]ne who, **by extreme and outrageous conduct and without privilege**, causes severe emotional distress to another is subject to liability for such emotional distress." *Agis v. Howard Johnson Co* ., 371 Mass. 140, 144 (1976) (emphasis added).  A plaintiff must allege facts that establish the following four elements to sustain a claim of intentional infliction of emotional distress: (1) an intent to inflict emotional distress or actual or constructive knowledge that emotional distress would be the likely result of the conduct; (2) conduct on the part of a defendant that is "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community;" and (3) causation (i.e. that defendant's actions were the cause of the

13

distress).  *Agis,* 371 Mass. at 144-45; *see also Lamanque v. Massachusetts Dep't of Employment and Training*, 3 F. Supp.2d 83, 94 (D. Mass. 1998).

The basis for plaintiff's intentional infliction claim is defendants' alleged intent to inflict emotional distress on plaintiff by falsely implicating him in a criminal action.  Complaint, ¶¶ 129-130.  The claim must fail because the actions about which plaintiff complains were privileged, the claim is untimely, and plaintiff has failed to plead facts adequate to raise an inference of extreme and outrageous conduct or severe distress.

### 1.    Alibris' Cooperation With the Government's Investigation Was Privileged

As is set forth above, statements made to police or prosecutors in the course of a criminal investigation or judicial proceedings are absolutely privileged, even if they are false or uttered with malice or in bad faith.  *See Correllas*, 410 Mass. at 319; *Seelig v. Harvard*, 355 Mass. 532, 538 (1969); *Sullivan v. Birmingham*, 11 Mass. App. Ct. 359, 366-367 (1981); *Sriberg v. Raymond*, 544 F.2d 15, 16 (1st Cir. 1977) (interpreting Massachusetts law).  A plaintiff cannot base an intentional infliction of emotional distress claim on conduct that is absolutely privileged.  *Correllas*, 410 Mass. at 324; *Sullivan*, 11 Mass. App. Ct. at 367.  As with plaintiff's claims of malicious prosecution and abuse of process, the basis for plaintiff's claim of intentional infliction of emotional distress against Alibris is Alibris' cooperation with criminal investigators and its alleged failure to exonerate plaintiff of responsibility for acts allegedly committed by Warchut and Krotkov without plaintiff's involvement.  The cooperation of Alibris and, for that matter, of Warchut and Krotkov, in the investigation conducted by government authorities, was absolutely privileged and cannot serve as the basis for a claim of intentional infliction of emotional distress.  Furthermore, Alibris did not have a duty to correct the record even if Alibris knew the allegations against plaintiff were false.  *See, e.g., Corellas,* 410 Mass. at 320 (affirming summary judgment for defendant as to intentional infliction of emotional distress claim on basis that any statement in course of criminal investigation

14

is absolutely privileged).  For these reasons, plaintiff's intentional infliction of emotional distress

claim against Alibris must be dismissed.

> **2.     Plaintiff's Intentional Infliction of Emotional Distress Claim
> Against Alibris Was Not Timely Filed**

The statute of limitations governing tort actions in Massachusetts requires that such actions

be commenced within three years after the cause of action accrues.  *See* Mass. Gen. Laws, ch. 260,

§2A.  With regard to intentional infliction of emotional distress, unless the circumstances are such

that the resulting damage is "inherently unknowable," and the statute of limitations is therefore

tolled until a plaintiff discovers, or reasonably should have discovered, that he has been harmed, the

manifestation of intentionally inflicted emotional injury must be "substantially contemporaneous

with the alleged outrageous conduct."  *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 699 (2000).

The complaint alleges that, "[b]ased on the false Warchut-Krotkov story, Trooper Barrett's

investigation [begun on April 10, 1998], which initially focused only on the Shaysnet Hack,

broadened to include Councilman's possible role in a scheme to intercept Amazon.com emails" and

the federal investigation had begun "by the following month," i.e. by May, 1998.  Warchut and

Krotkov's allegedly outrageous conduct occurred in 1998, and the only reasonable inference to be

drawn from the allegations is that plaintiff knew, in 1998, that he was under investigation for illegal

activity based on the information Warchut and Krotkov had provided to Federal law enforcement

officials.  Certainly plaintiff knew, **at the latest**, by the time he was asked by Alibris to resign from

the Board of Directors in July 1998 that he had been implicated in criminal proceedings.

Complaint, ¶ 98.  Indeed, the only fair reading of the complaint is that the investigation was what,

in part, led to his resignation from Alibris' board and the subsequent termination of his

employment.  *See* Complaint, ¶¶ 90, 94-98.

Plaintiff's claim of intentional infliction of emotional distress against Alibris should have

been filed, at the latest, by October 21, 2002, three years after the termination of his employment

with Alibris.  It was not filed until July 2004.  Plaintiff's claim for intentional infliction of emotional distress should be dismissed as untimely.[5]

### 3.    Plaintiff Has Not Alleged Actionable Misconduct By Alibris

Plaintiff also has not alleged conduct **by Alibris** that would support a claim of intentional infliction of emotional distress.  The burden on a plaintiff in this regard is substantial:  it is not enough to allege that a defendant acted with tortious or criminal intent, malice, or an intent to inflict emotional distress.  *See Lamanque*, 3 F. Supp.2d at 94.  So, for example, the fact that a co-defendant knew of extreme misconduct by other employees toward a plaintiff and failed to prevent such behavior was not sufficient to support a claim for intentional infliction of emotional distress against the employer.  *See O'Brien v. Avis Rent A Car System, Inc.*, 1997 WL 260515, *6 (Mass. Super. 1997).  Even an employer's knowingly false accusation against, and discharge of, an employee will not support an intentional infliction of emotional distress claim against the employer. *See Orell v. Umass Memorial Medical Center, Inc*., 203 F. Supp.2d 52, 70 (D. Mass. 2002).

In this case, plaintiff alleges that "[i]n the course of cooperation [with the Government's ongoing investigation of Councilman], Alibris management assisted Warchut in falsely implicating Councilman in connection with a scheme to illegally intercept Amazon.com emails.  Alibris knew and/or recklessly failed to learn that Councilman did not direct either Warchut or Krotkov to illegally intercept Amazon.com emails.  Alibris knew and/or recklessly failed to learn that, in the

---

[5] It does not appear that plaintiff claims emotional distress arising out of Alibris' request that he resign from the Board of Directors or from his subsequent termination of employment.  *See* Complaint, ¶¶ 95-98 and 103.  To the extent plaintiff claims personal injury from emotional distress arising from these events, those claims should be dismissed for the additional reason that they are barred by the Massachusetts Worker's Compensation Act, Mass. Gen. Laws ch. 152, §§1 *et. seq.* ("Workers Compensation Act").  Common law actions are barred by the Workers Compensation Act when the plaintiff is an employee; his condition is a "personal injury;" the injury is shown to have arisen "out of and in the course of . . . employment" and a plaintiff has not otherwise given notice of his intent to pursue such claims as a common law action.  *Foley v. Polaroid Corp*., 381 Mass. 545, 548-549 (1980), *citing* Mass. Gen. Laws. ch. 152, §26.  Intentional infliction of emotional distress claims, since they require the element of personal injury (i.e. emotional distress) have been found to come within the meaning of personal injury under the Workers Compensation Act, which provides the exclusive remedy for any personal injury that arises in the course of employment.  S*ee, e.g., Anzalone v. Massachusetts Bay Transp. Authority*, 403 Mass. 119, 124-25 (1988).

course of the investigation. Warchut and Krotkov told multiple inconsistent versions of the false story they concocted." Complaint ¶¶ 100, 104.

Plaintiff has not alleged any act by Alibris that "assist[ed]" Warchut with falsely implicating plaintiff in a criminal conspiracy. At most, the complaint alleges that Alibris failed to exonerate plaintiff when Alibris should have known he was being falsely accused of a crime. Under Massachusetts law, an alleged failure to challenge or correct the actions of another that will result in injury to the plaintiff does not amount to extreme and outrageous conduct that passes all bounds of decency. *See, e.g., Butner v. Department of State Police,* 60 Mass. App. Ct. 461, 469-470 (2004) (defendants' failure to challenge discriminatory policy that injured plaintiffs not extreme and outrageous conduct sufficient to support a claim of intentional infliction of emotional distress); *see also Orell*, 203 F. Supp.2d at 70 (defendant's alleged act of terminating plaintiff's employment by means of false accusations not sufficient to state claim of intentional infliction of emotional distress). Because plaintiff has failed to allege any fact that would establish that the actions of Alibris, as opposed to those of Warchut or Krotkov, in any way caused plaintiff's alleged emotional distress, this claim against Alibris must be dismissed.

**4.      Plaintiff's Claims Against Alibris for Vicarious Liability for Intentional Infliction of Emotional Distress Must Fail Because Warchut Was Not Acting Within the Scope of His Employment**

As is set forth above, the allegations in the complaint do not support any reasonable inference that Warchut was acting within his scope of employment with Alibris when he implicated plaintiff in a criminal conspiracy. Moreover, once the investigation began, Warchut's cooperation with investigators was absolutely privileged. Alibris cannot be held vicariously liable to plaintiff for emotional distress arising from Warchut's actions when Warchut himself cannot be liable because those actions were protected by privilege and when those actions were not within the scope of Warchut's employment with Alibris.

### E.    Plaintiff's Claim Against Alibris for Alleged Violation of Chapter 93A Should Be Dismissed

Plaintiff here fails to state a claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"), which requires that a plaintiff allege facts sufficient to show that the defendant used or employed **an unfair method of competition** or unfair and deceptive acts or practices **in the conduct of any trade or commerce**.  Mass. Gen. Laws c. 93A, §§2, 9, 11; s*ee Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 501-502 (1979).

Chapter 93A defines "trade" and "commerce" as follows:

> "'Trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rental, lease or distribution of any services and any property, tangible or intangible, real, personal, or mixed, any security as defined in [M.G.L.A. c. 110A, § 401(k)] and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."  Mass. Gen. Laws ch. 93A, § 1(b).

The proscription in G.L. c. 93A, § 2 of "unfair or deceptive acts or practices in the conduct of any trade or commerce" applies only to acts or practices in a business context.  *Lantner v. Carson,* 374 Mass. 606, 611-612 (1978).  If the acts of a person or business entity are not undertaken in the course of trade or commerce, that conduct is not subject to Chapter 93A, no matter how unfair or deceptive that conduct may have been.

Whether a transaction can be deemed to take place in the conduct of trade or commerce is determined from the facts presented in each case, and in each case the court must examine the nature of the transaction at issue, the character of the parties involved, and the activities engaged in by the parties.  *See Begelfer v. Najarian*, 381 Mass. 177, 190-191 (1980); *Lantner,* 374 Mass. at 611-612 (Chapter 93A does not apply to real estate transactions of solely private nature).

The terms "trade" and "commerce" refer only to dealings between legally separate entities or persons engaged in arms-length business transactions.  *See KPS & Associates, Inc. v. Designs By FMC, Inc*., 318 F.3d 1, 23-24 (1st Cir. Mass. 2003); Mass. Gen. Laws ch. 93A, § 2.  Transactions

are not in the course of trade or commerce if they consist solely of dealings between members of a single legal entity (i.e. intra-enterprise dealings) such as a corporation or a partnership because members of the same organization cannot be engaged in trade or commerce with each other. For this reason, disputes between employers and employees are outside the scope of Chapter 93A. *See Manning v. Zuckerman*, 388 Mass. 8, 11-13 (1983) ("An employee and an employer are not engaged in trade or commerce with each other," even though the employer may be engaged in trade or commerce with others in the marketplace); *Weeks v. Harbor National Bank*, 388 Mass. 141, 144 (1983); *O'Connell v. Bank of Boston*, 37 Mass. App. Ct. 416, 422 (1994). Disputes stemming from such dealings are essentially private in nature and are not undertaken in the ordinary course of business. For example, in the *O'Connell* case, the employer's investigation of theft by its employees and the employer's initiation of criminal charges later found to be unwarranted were held not to be business dealings in the conduct of trade or commerce within the meaning of Chapter 93A. *See O'Connell*, 37 Mass. App. Ct. at 422.

Here, plaintiff has not alleged that Alibris engaged in any act that harmed plaintiff ***as a consumer or as a business competitor in a business context***. Although plaintiff implies that Alibris acted, or failed to act, because it was concerned with "the company's best interest" and finances, *see* Complaint ¶¶ 92-93, 96-97, an alleged business purpose is not enough if the plaintiff fails to allege that he had any relationship with Alibris beyond that of employee or that Alibris took any actions against him while he and Alibris were engaged in the conduct of trade or commerce *with **each** other*. *See, e.g., Begelfer*, 381 Mass. at 190-191 (summary judgment granted to defendant lenders because plaintiff borrowers failed to show the lenders were "persons engaged in the conduct of any trade or commerce" with borrowers). The only reasonable inference to be drawn from the complaint in this case is that Alibris' dealings were not "arms length transactions" in a business context, but were solely "intra-enterprise" transactions arising from plaintiff were as

an employee of Interloc and a director and officer of Alibris.  These transactions are not within the purview of Chapter 93A.[6]  For these reasons, plaintiff's Chapter 93A claim against Alibris must be dismissed.

## IV.    Conclusion

For all of the foregoing reasons, defendant Alibris respectfully requests that this Court dismiss all counts in plaintiff's complaint against Alibris.

Respectfully submitted,

The Defendant,
ALIBRIS, INC.
By Its Attorneys:

January 31, 2005                         /s/ Katherine A. Robertson
                                        Katherine A. Robertson
                                         BBO No. 557609
                                        Bulkley, Richardson and Gelinas, LLP
                                        1500 Main Street, Suite 2700
                                        Springfield, MA  01115
                                        Tel:  (413) 781-2820
                                        Fax:  (413) 272-6804

---

[6] Plaintiff alleges, in his Complaint that he mailed a Chapter 93A demand for relief to Alibris before he initiated this action.  Complaint, ¶ 142.  He did not identify the date of that correspondence.  The only letter Alibris has identified that might be construed as a demand letter is a January 13, 2004 letter, a copy of which is attached hereto as Exhibit D to this Memorandum.  If this is the letter to which Plaintiff refers, it is wholly insufficient under Chapter 93A as a demand letter because it fails to identify unfair or deceptive acts or practices by Alibris in the conduct of trade or commerce or provide any notice to Alibris that a claim under Chapter 93A is being asserted.