# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN CLERK'S
OFFICE
Nov 22  10 15 AM '99
U.S. DISTRICT COURT
MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | CRIMINAL NO. 99-_____ (MAP) |
| | ) | VIOLATIONS: |
| | ) | 18 U.S.C. § 2511(1)(a)- |
| | ) | Interception of Electronic |
| ALIBRIS, as successor- | ) | Communications; |
| in-interest to Interloc, Inc., | ) | 18 U.S.C. § 1029(a)(3)- |
| Defendant. | ) | Access Device Fraud |
| | ) | |

INFORMATION

COUNTS ONE - TEN:    18 U.S.C. § 2511(1)(a) - Interception of
Electronic Communications

The United States Attorney charges:

1. ALIBRIS is a California business corporation, with a principal place of business in Emeryville, California.

2. ALIBRIS is successor-in-interest to Interloc, Inc. ("Interloc"), which, at all times material to this information, was a Washington business corporation with a principal place of business in Greenfield, Massachusetts. Interloc was an on-line bookseller, and also did business under the name Valinet as an electronic service provider in the Greenfield, Massachusetts area. ALIBRIS merged with Interloc on or about May 8, 1998.

3. At all times material to this information, Interloc provided certain of its book dealer customers with an electronic mail address and acted as an electronic communications service provider. In other words, a particular dealer could receive electronic mail via the Internet using an address designated dealer@interloc.com.

4. In or about January, 1998, Interloc altered its

A1000068

computerized electronic mail routine, .procmailrc, so that it automatically intercepted and stored electronic mail addressed from online bookseller amazon.com to Interloc book dealer customers.

5.    At divers times during the period April to June 1998, Interloc and later ALIBRIS intercepted and stored incoming electronic mail. Between on or about April 13, 1998 and May 4, 1998, Interloc intercepted 3,067 electronic mail communications, to which Interloc was not a party, and stored them on Interloc's computer system. Between on or about June 3, 1998 and June 8, 1998, ALIBRIS intercepted 858 electronic mail communications, to which Interloc was not a party, and stored them on ALIBRIS's computer system.

6.    Each electronic mail message so intercepted constituted an "electronic communication" as that term is defined in Title 18, United States Code, Section 2510(12), the transfer of which affected interstate and foreign commerce.

7.    The fact that Interloc was an electronic service provider enabled it to take advantage of the contents of customers' electronic mail messages for commercial purposes. One of the purposes of the interceptions was to compile a database of dealers' purchases and to analyze the bookselling market for competitive advantage.

AI000069

8.    On or about each of the dates set forth below, at Greenfield, in the District of Massachusetts,

ALIBRIS,

and its predecessor corporation Interloc, Inc., defendant herein, did intentionally intercept, endeavor to intercept, and procure persons to intercept and endeavor to intercept, the electronic communications identified below:

| Count | Date | Description of Electronic Communication |
|-------|------|----------------------------------------|
| 1 | April 13, 1998 | Electronic mail message from amazon.com to Bookmart, Fountain View, CA (bookmart@interloc.com) |
| 2 | April 14, 1998 | Electronic mail message from amazon.com to Twice Upon a Time Bookshop, Grand Junction, CO (TWICETIM@interloc.com) |
| 3 | April 20, 1998 | Electronic mail message from amazon.com to Bob Coffin Books, Las Vegas, NV (BCOFFIN@interloc.com) |
| 4 | April 21, 1998 | Electronic mail message from amazon.com to Gibson's Books, Owens Cross Roads, AL (gibson@interloc.com) |
| 5 | April 29, 1998 | Electronic mail message from amazon.com to Ye Olde Bookworm, Odessa, TX (BOOKWORM@interloc.com) |
| 6 | May 1, 1998 | Electronic mail message from amazon.com to John Newland, Gloucester, UK (JNEWLAND@interloc.com) |
| 7 | May 4, 1998 | Electronic mail message from amazon.com to Dan Behnke Bookseller, Northbrook, IL (behnkebk@interloc.com) |

| 8 | June 3, 1998 | Electronic mail message from amazon.com to William Roos/Antiquarian Books, Honesdale, PA (billroos@interloc.com) |
| 9 | June 4, 1998 | Electronic mail message from amazon.com to Bank of Books, Oxnard, CA (bankofbk@interloc.com) |
| 10 | June 8, 1998 | Electronic mail message from amazon.com to Bartlett Street Book Store, Medford, OR (bartlett@interloc.com) |

Each in violation of Title 18, United States Code, Sections 2511(1)(a).

AI000071

COUNT ELEVEN:  18 U.S.C. § 1029(a)(3) - Access Device Fraud

The United States Attorney further charges:

    9.  The allegations contained in paragraphs 1 through 3 are repeated and incorporated herein by reference.

    10.  In conducting business as an electronic communications provider under the name Valinet, Interloc obtained and retained unauthorized copies of the confidential and proprietary password files and customer lists of its competitors, including Shaysnet, Inc., Crocker Communications, Inc., and Megatron Data, Inc.

    11.  On or about June 8, 1998, at Greenfield, in the District of Massachusetts,

<div align="center">ALIBRIS,</div>

defendant herein, did knowingly and with intent to defraud possess fifteen and more devices which are unauthorized access devices, specifically, the customer password files of Shaysnet, Crocker Communications, Inc., and Megatron Data, Inc.

    All in violation of Title 18, United States Code, Section 1029(a)(3).

DONALD K. STERN
United States Attorney

By: _____
JEANNE M. KEMPTHORNE
Assistant U.S. Attorney

Date: November 22, 1999

AI000072

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Massachusetts

UNITED STATES OF AMERICA
v.
ALIBRIS, as successor-in-interest to Interloc, Inc.

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number:  3:99CR30036-001

Ethan Schulman, Esq.
Defendant's Attorney

### THE DEFENDANT:

☐ pleaded guilty to count(s)  1-11
☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.
☐ was found guilty on count(s) _____
   after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.  §  2511 (1)(a) | INTERCEPTION OF ELECTRONIC COMMUNICATIONS | 06/08/1998 | 1-10 |
| 18 U.S.C.  §  1029 (a)(3) | ACCESS DEVICE FRAUD | 06/08/1999 | 11 |

The defendant is sentenced as provided in pages 2 through __3__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:  XXX-XX-XXXX

Defendant's Date of Birth: _____

Defendant's USM No.: _____

Defendant's Residence Address:

1250 45TH STREET, SUITE 100

EMERYVILLE                    CA        94608

Defendant's Mailing Address:

1250 45TH STREET, SUITE 100

EMERYVILLE                    CA        94608

11/29/1999
Date of Imposition of Judgment

Signature of Judicial Officer

MICHAEL A. PONSOR

U.S. DISTRICT JUDGE
Name & Title of Judicial Officer

11/30/99
Date

A1000073


AO 245B (Rev. 8/96) Sheet 5, Part A - Criminal Monetary Penalties

Judgment—Page __2__ of __3__

DEFENDANT:      ALIBRIS, as successor-in-interest to Interloc, Inc.

CASE NUMBER:      3:99CR30036-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | Assessment | | Fine | | Restitution |
|---|---|---|---|---|---|
| Totals: | $   4,400.00 | $ | 250,000.00 | $ | |

If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     The interest requirement is waived.

     The interest requirement is modified as follows:

## RESTITUTION

The determination of restitution is deferred until ___ _____. ___ An Amended Judgment in a Criminal Case will be entered after such a determination.

The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | * Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |

Totals:   $ _____   $ _____

AI000074

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for off...

AO 245B (Rev. 8/96) Sheet 5, Part B - Criminal Monetary Penalties

Judgment-Page ___3___ of ___3___

DEFENDANT:        ALIBRIS, as successor-in-interest to Interloc, Inc.

CASE NUMBER:      3:99CR30036-001

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☐  in full immediately; or

B  ☐  $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____ ; or

D  ☐  in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ (e.g. equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

ANY MONETARY LOSS SHALL BE PAID TO VICTIMS WITHIN 6 MONTHS

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

AI000075

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                           )   CRIMINAL NO. ~~00~~ 1:01cr10245 mlw
        v.            )   VIOLATION:
                           )   18 U.S.C. § 371–
                           )   Conspiracy
BRADFORD C. COUNCILMAN,   )
      Defendant.       )

<u>INDICTMENT</u>

COUNT ONE:    18 U.S.C. § 371 - Conspiracy

The Grand Jury charges:

    At all times material to this Indictment:

    1.   Defendant BRADFORD C. COUNCILMAN was an individual who resided in Montague, Massachusetts, and was a vice president and shareholder of Interloc, Inc. and its successor corporation Alibris.

    2.   Until on or about May 8, 1998, Interloc, Inc. ("Interloc") was a Washington business corporation with a principal place of business in Greenfield, Massachusetts. Interloc was an on-line subscription list service for booksellers, and also did business under the name Valinet as an electronic service provider in the Greenfield, Massachusetts area.

    3.   On or about May 8, 1998, Interloc merged into Alibris, a California business corporation, with a principal place of business in Emeryville, California.

    4.   Among defendant BRADFORD C. COUNCILMAN's duties was to



operate, together with others, the electronic communications service provided by Internet Service Provider Valinet and the book dealer subscription list service operated by Interloc.

5.    From in or about January 1998 through in or about June 1998, at Greenfield, in the District of Massachusetts, and elsewhere,

<div align="center">BRADFORD C. COUNCILMAN,</div>

defendant herein, did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit,

(a) to intentionally intercept and endeavor to intercept electronic communications, in violation of Title 18, United States Code, Section 2511(1)(a);

(b) to intentionally disclose, and endeavor to disclose, to other persons the contents of electronic communications, knowing and having reason to know that the information was obtained through the unlawful interception of electronic communications, in violation of Title 18, United States Code, Section 2511(1)(a);

(c) to intentionally use, and endeavor to use, the contents of electronic communications, knowing and having reason to know that the information was obtained through the unlawful interception of electronic communications, in violation of Title 18, United States Code, Section 2511(1)(c); and

(d) to cause a person and entity providing an electronic

communication service to intentionally divulge the contents of communications while in transmission on that service to persons and entities other than the addressee, intended recipient of such communication, or an agent of the addressee or intended recipient, in violation of Title 18, United States Code, Section 2511(3)(a).

<div align="center">

Object of the Conspiracy
</div>

6.    It was the object of the conspiracy to intercept, store, disclose, and use electronic communications to which Interloc and the conspirators were not party, for the commercial advantage of Interloc's book dealer business, in violation of Title 18, United States Code, sections 2511(1)(a), (c), (d), and (3)(a). In particular, the ultimate object of the conspiracy was to exploit the content of electronic mail from Amazon.com to dealers in order to develop a "most wanted" list of books, to learn about competitors, and for other commercial purposes entirely unrelated to the delivery of the electronic communications the conspirators intercepted.

7.    The interceptions, storage, disclosure, and use of the electronic mail messages were not for any legitimate purpose related to the maintenance of Interloc's electronic communications system, nor were they a necessary incident to the rendition of the communications service, nor to the protection of the rights or property of the provider of that service.

<div align="center">

3
</div>

## Manner and Means of the Conspiracy

8.   At all times material to this Indictment, Interloc provided certain of its book dealer customers with an electronic mail address and acted as an electronic communications service provider with respect to the transmission of electronic mail to and from those dealers.  In other words, a particular dealer could send and receive electronic mail via Interloc using an address designated dealer@interloc.com.

9.   From at least 1996, Interloc employees, including COUNCILMAN, routinely read the contents of private communications to and from its member dealers, without their knowledge or permission.  They did so for reasons of commercial advantage and private commercial gain, and not as a necessary incident to the transmission and delivery of the electronic messages, or to protect or maintain the communications system or the rights of the provider.  In particular, Interloc employees, including COUNCILMAN, read electronic mail to and from customers of competitors bibliofind.com and Advanced Book Exchange (ABE) in order to create competitive advantage and to develop leads for new subscribers.  They also routinely monitored the traffic of messages from Amazon.com to subscribers.

10.   In or about January, 1998, COUNCILMAN approached Interloc's computer systems administrators to write computer code to intercept and copy all communications from Amazon.com to

4

subscriber dealers.   The purpose of this interception was to develop information that would lead to a competitive advantage for Interloc and enable it to develop a new business plan for Interloc's book business.   The plan to intercept and copy messages had nothing to do with the transmission and delivery of electronic communications.

11.   In January, 1998, at COUNCILMAN's direction and under his supervision, Interloc's systems administrator wrote a revision to the mail processing code, known as procmail.rc, designed to intercept, copy, and store, on an on-going and prospective basis, all incoming messages from Amazon.com.

12.   The procmail.rc script worked to intercept incoming electronic mail messages before they were delivered to the intended recipient's electronic mailbox and before the message was read by the intended recipient.   During the course of the conspiracy, thousands of electronic mail messages were intercepted and then stored for the purpose of analyzing the contents for commercial purposes relating to the bookselling business.

13.   In or about early June, 1998, Councilman and others devised a plan to create a database of commercial information, including a "most wanted" list, derived from the electronic messages intercepted from Amazon.com.

5

<u>Overt Acts</u>

14.   In furtherance of the conspiracy and to effect its object, the following overt acts took place in the District of Massachusetts:

a.   In or about January, 1998, defendant BRADFORD C. COUNCILMAN instructed two employees of Interloc, including systems administrator Michael Warchut, to alter the script of the procmail.rc computer routine so that certain categories of electronic mail messages, including all mail from Amazon.com, would be intercepted, filtered, and routed to a computer file.

b.   In or about January 1998, systems administrator Michael Warchut wrote and implemented the altered procmail.rc script to effect the interception COUNCILMAN had instructed him to cause. Warchut caused the intercepted messages to be stored for later analysis in a computer file called "nile" on the Interloc "host" computer.

c.   From on or about April 13, 1998, to on or about May 4, 1998, at least 3,067 electronic mail messages were intercepted by means of the procmail.rc device and stored in the "nile" file on Interloc's "host" computer.

d.   On or about April 13, 1998, COUNCILMAN disclosed to Russ Klein and others an electronic mail communication from Amazon.com dated April 7, 1998, to which neither COUNCILMAN nor any of the persons to whom he disclosed it was a party.

COUNCILMAN made the disclosure to promote Interloc's commercial advantage as an on-line bookdealer and list service, and not for any purpose related to the delivery of the communication to the intended recipient.

e.    In or about May, 1998, Warchut altered the procmail.rc script to change the computer location on which intercepted electronic mail messages would be stored from the Interloc "host" computer to the "blizzard" computer.

f.    On or about June 3, 1998, COUNCILMAN disclosed to Martin Manley and others an electronic mail communication from Amazon.com dated June 1, 1998, to which neither COUNCILMAN nor any of the persons to whom he disclosed it was a party. COUNCILMAN made the disclosure to promote Interloc's commercial advantage as an on-line bookdealer and list service, and not for any purpose related to the delivery of the communication to the intended recipient.

g.    Between on or about June 3, 1998, and June 8, 1998, at least 858 electronic mail communications, to which Interloc was not a party, were intercepted by use of the procmail.rc device and stored on the "blizzard" computer system.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO:    18 U.S.C. § 371 - Conspiracy

The Grand Jury charges further:

15.    The allegations contained in paragraphs 1 through 4 are repeated and incorporated herein.

16.    In or about April 1998, at Greenfield, in the District of Massachusetts and elsewhere,

<p style="text-align:center">BRADFORD C. COUNCILMAN,</p>

defendant herein, did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit, to intentionally access a computer without authorization and to exceed authorized access, and thereby to obtain information from a protected computer for the purposes of commercial advantage and private financial gain, which conduct involved interstate communication, in violation of Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B).

<p style="text-align:center">Object of the Conspiracy</p>

16.    It was the object of the conspiracy to obtain access to private portions of the computer system, including the website, of Studio 32, a computer software development firm located in San Francisco, California, and to obtain private information therefrom in order to prove that the unauthorized access had occurred.

17.    The conspirators' purpose in obtaining unauthorized

<p style="text-align:center">8</p>

access and in obtaining the private information was to demonstrate the weakness in Studio 32's own computer security system and the relative superiority of the conspirators' skills. COUNCILMAN and the other conspirators hoped to convince Alibris executives that Studio 32's involvement in Alibris's computer upgrade project was unnecessary and that the Interloc operation headed by COUNCILMAN was better equipped to do the job.

18.   Studio 32's computer system was a "protected computer" within the meaning of Title 18, United States Code, Section 1030(e)(2)(B), in that the system was used in interstate and foreign commerce and communication.

<u>Overt Acts</u>

19.   In furtherance of and to effect the object of the conspiracy, the following overt acts were committed in the District of Massachusetts:

a.   In or about late March 1998, the systems administrator of Interloc gained unauthorized access to the Studio 32 computer network through the Windows NT operating system using a hole in the system's password program.  This conduct required interstate communication between Massachusetts and California.

b.   Shortly thereafter, COUNCILMAN instructed the systems administrator to again gain unauthorized access to Studio 32's system and retrieve information in order to prove that the unauthorized access had been obtained.

9

    c.   On or about March 30, 1998, the systems administrator, upon COUNCILMAN's instruction, gained unauthorized access to the system, including computers named "rover", "belvedere", "lam", "mcfrimobile", "bootsy", "vc1", and "vc2", and thereby obtained private information from Studio 32's protected computer, including confidential business information.

    d.   On or about April 1, 1998, COUNCILMAN reported to Alibris that Studio 32's system was insecure, and stated, "This morning we looked at everything from their accounting data to their contact database, as well as documents relating to our project and their other customers as well. . . .  I'm starting to think in terms of 'let's give them another 8 hours on this, and then fire them!' . . .  My guys are starting to look better and better (and cheaper too). . . .".

    All in violation of Title 18, United States Code, Section 371.

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )    01-10245-MAP |
| v. | ) |
| | ) |
| BRADFORD C. COUNCILMAN | ) |

### DISMISSAL OF COUNT TWO OF THE INDICTMENT

Michael J. Sullivan, the United States Attorney for the District of Massachusetts, pursuant

to Rule 48(a) of the Federal Rules of Criminal Procedure, hereby dismisses Count 2 of the above-

captioned Indictment, charging a violation of Title 18, United States Code, Section 371

(conspiracy to violate Title 18, United States Code, Section 1030(a)(2)). In light of recent

developments in the relevant case law, the interests of justice are served by dismissal of this

Count.

 

                                              MICHAEL J. SULLIVAN
                                              United States Attorney

dated:  June 5, 2003

                                   By
                                   PAUL G. LEVENSON
                                   Assistant U.S. Attorney
                                   John Joseph Moakley United States Courthouse
                                   1 Courthouse Way, Suite 9200
                                   Boston, MA 02210
                                   (617) 748-3147

Leave to file granted:

 

_____

MICHAEL A. PONSOR
United States District Judge

dated:  _____

## CERTIFICATE OF SERVICE

I hereby certify that on this day I will cause a true copy of the above document to be served by First Class Mail upon counsel of record for defendant, addressed as follows:

> Andrew Good, Esq.
> Silverglate & Good
> 83 Atlantic Avenue
> Boston, MA 02110-3711

Dated: June 5, 2003

Paul G. Levenson

# EXHIBIT D

# GOOD & CORMIER

## ATTORNEYS-AT-LAW

83 Atlantic Avenue, Boston, Massachusetts 02110-3711

*Telephone* (617) 523-5933 *Facsimile* (617) 523-7554

**Andrew Good**
Ext. 208, Email: *agood@goodcormier.com*

**Philip G. Cormier**
Ext. 212, Email: *pcormier@goodcormier.com*

**Matthew Zisow**
Ext. 213, Email: *mzisow@goodcormier.com*

*Of Counsel:*
**Harvey A. Silverglate**
Ext. 209, Email: *has@goodcormier.com*

January 13, 2004

Ethan Balogh, Esq.
Keker & Van Nest
710 Sansome Street
San Francisco, CA   94111

RE:  Bradford C. Councilman and Alibris Corporation

Dear Ethan:

Last week you called me and told me that Alibris is planning an initial public offering of securities issued by the corporation in the near future. You asked me to provide you with information concerning Brad Councilman's claims against the corporation.

As you know, subsequent to the termination of Brad's employment by Alibris, he was indicted by a federal grand jury in two counts: (1) conspiracy to intercept and to illegally disclose and use illegally intercepted electronic mail; and (2) conspiracy to enter a protected computer without authorization. The activites underlying both charges were alleged to have occurred during and in the course of Mr. Councilman's employment at Alibris. As you also know, in 2003 the federal district court ruled that the conduct charged in the first count did not constitute a crime, and the government's appeal from that order is pending. The government subsequently dismissed the second count, because it correctly determined that the unauthorized entries, if any, underlying that count were committed by another Alibris employee, Michael Warchut, and Mr. Councilman's complicity could not be proven at trial.

In the course of Mr. Councilman struggle against these unfounded charges, we learned that, after his employment was terminated, Alibris made maliciously false accusations against him that caused him to be indicted. Alibris committed these malicious acts in order to avoid and minimize its own potential criminal liability and that of other present and former Alibris employees, including but not limited to Martin Manley, Michael Warchut, and Peter Krotkov. The potential criminal liability that Alibris and its employees sought to minimize and avoid by maliciously and falsely inculpating Mr. Councilman were not limited to the activities referred to in Mr. Councilman's

indictment; the activities also included unauthorized entries into the computer system of an Alibris competitor: Shaysnet.

As the direct result of Alibris's tortious conduct, Mr. Councilman has been severely damaged in the following respects: damage to his earning capacity and career, legal fees and expenses, reputational damage, and pain and suffering. To settle these claims without litigation, Alibris should pay Mr. Councilman $1 million dollars.

Sincerely,

Andrew Good

cc: Bradford C. Councilman

G:\CLIENTS\Councilman\Letters\Balogh 1-13-04.doc

**GOOD & CORMIER**