# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN CLERK'S
OFFICE

Nov 22  10 15 AM '99

U.S. DISTRICT COURT
MASSACHUSETTS

UNITED STATES OF AMERICA, )
                         )    CRIMINAL NO. 99-
        v.               )    VIOLATIONS:
                         )    18 U.S.C. § 2511(1)(a)-
                         )    Interception of Electronic
ALIBRIS, as successor-   )    Communications;
 in-interest to Interloc, Inc.,)  18 U.S.C. § 1029(a)(3)-
        Defendant.       )    Access Device Fraud

INFORMATION

COUNTS ONE - TEN:    18 U.S.C. § 2511(1)(a) - Interception of
                     Electronic Communications

The United States Attorney charges:

1. ALIBRIS is a California business corporation, with a
principal place of business in Emeryville, California.

2. ALIBRIS is successor-in-interest to Interloc, Inc.
("Interloc"), which, at all times material to this information,
was a Washington business corporation with a principal place of
business in Greenfield, Massachusetts.  Interloc was an on-line
bookseller, and also did business under the name Valinet as an
electronic service provider in the Greenfield, Massachusetts
area.  ALIBRIS merged with Interloc on or about May 8, 1998.

3. At all times material to this information, Interloc
provided certain of its book dealer customers with an electronic
mail address and acted as an electronic communications service
provider.  In other words, a particular dealer could receive
electronic mail via the Internet using an address designated
dealer@interloc.com.

4. In or about January, 1998, Interloc altered its

A1000068

computerized electronic mail routine, .procmailrc, so that it automatically intercepted and stored electronic mail addressed from online bookseller amazon.com to Interloc book dealer customers.

5.    At divers times during the period April to June 1998, Interloc and later ALIBRIS intercepted and stored incoming electronic mail. Between on or about April 13, 1998 and May 4, 1998, Interloc intercepted 3,067 electronic mail communications, to which Interloc was not a party, and stored them on Interloc's computer system. Between on or about June 3, 1998 and June 8, 1998, ALIBRIS intercepted 858 electronic mail communications, to which Interloc was not a party, and stored them on ALIBRIS's computer system.

6.    Each electronic mail message so intercepted constituted an "electronic communication" as that term is defined in Title 18, United States Code, Section 2510(12), the transfer of which affected interstate and foreign commerce.

7.    The fact that Interloc was an electronic service provider enabled it to take advantage of the contents of customers' electronic mail messages for commercial purposes. One of the purposes of the interceptions was to compile a database of dealers' purchases and to analyze the bookselling market for competitive advantage.

8.   On or about each of the dates set forth below, at Greenfield, in the District of Massachusetts,

ALIBRIS,

and its predecessor corporation Interloc, Inc., defendant herein, did intentionally intercept, endeavor to intercept, and procure persons to intercept and endeavor to intercept, the electronic communications identified below:

| Count | Date | Description of Electronic Communication |
|-------|------|------------------------------------------|
| 1 | April 13, 1998 | Electronic mail message from amazon.com to Bookmart, Fountain View, CA (bookmart@interloc.com) |
| 2 | April 14, 1998 | Electronic mail message from amazon.com to Twice Upon a Time Bookshop, Grand Junction, CO (TWICETIM@interloc.com) |
| 3 | April 20, 1998 | Electronic mail message from amazon.com to Bob Coffin Books, Las Vegas, NV (BCOFFIN@interloc.com) |
| 4 | April 21, 1998 | Electronic mail message from amazon.com to Gibson's Books, Owens Cross Roads, AL (gibson@interloc.com) |
| 5 | April 29, 1998 | Electronic mail message from amazon.com to Ye Olde Bookworm, Odessa, TX (BOOKWORM@interloc.com) |
| 6 | May 1, 1998 | Electronic mail message from amazon.com to John Newland, Gloucester, UK (JNEWLAND@interloc.com) |
| 7 | May 4, 1998 | Electronic mail message from amazon.com to Dan Behnke Bookseller, Northbrook, IL (behnkebk@interloc.com) |

AI000070

| 8 | June 3, 1998 | Electronic mail message from amazon.com to William Roos/Antiquarian Books, Honesdale, PA (billroos@interloc.com) |
| 9 | June 4, 1998 | Electronic mail message from amazon.com to Bank of Books, Oxnard, CA (bankofbk@interloc.com) |
| 10 | June 8, 1998 | Electronic mail message from amazon.com to Bartlett Street Book Store, Medford, OR (bartlett@interloc.com) |

Each in violation of Title 18, United States Code, Sections 2511(1)(a).

COUNT ELEVEN:   18 U.S.C. § 1029(a)(3) - Access Device Fraud

The United States Attorney further charges:

9.   The allegations contained in paragraphs 1 through 3 are repeated and incorporated herein by reference.

10.   In conducting business as an electronic communications provider under the name Valinet, Interloc obtained and retained unauthorized copies of the confidential and proprietary password files and customer lists of its competitors, including Shaysnet, Inc., Crocker Communications, Inc., and Megatron Data, Inc.

11.   On or about June 8, 1998, at Greenfield, in the District of Massachusetts,

                    ALIBRIS,

defendant herein, did knowingly and with intent to defraud possess fifteen and more devices which are unauthorized access devices, specifically, the customer password files of Shaysnet, Crocker Communications, Inc., and Megatron Data, Inc.

All in violation of Title 18, United States Code, Section 1029(a)(3).

                              DONALD K. STERN
                              United States Attorney

                    By:   _____
                              JEANNE M. KEMPTHORNE
                              Assistant U.S. Attorney

Date: November 22, 1999

AI000072

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Massachusetts

UNITED STATES OF AMERICA

v.

ALIBRIS, as successor-in-interest to Interloc, Inc.

**JUDGMENT IN A CRIMINAL CASE**

(For Offenses Committed On or After November 1, 1987)

Case Number: 3:99CR30036-001

Ethan Schulman, Esq.

### THE DEFENDANT:

Defendant's Attorney

☐ pleaded guilty to count(s)  1-11

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 2511 (1)(a) | INTERCEPTION OF ELECTRONIC COMMUNICATIONS | 06/08/1998 | 1-10 |
| 18 U.S.C. § 1029 (a)(3) | ACCESS DEVICE FRAUD | 06/08/1999 | 11 |

The defendant is sentenced as provided in pages 2 through __3__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: XXX-XX-XXXX

Defendant's Date of Birth:

Defendant's USM No.:

Defendant's Residence Address:

11/29/1999

Date of Imposition of Judgment

_Signature of Judicial Officer_

1250 45TH STREET, SUITE 100

EMERYVILLE                    CA        94608

MICHAEL A. PONSOR

U.S. DISTRICT JUDGE

Defendant's Mailing Address:

Name & Title of Judicial Officer

1250 45TH STREET, SUITE 100

EMERYVILLE                    CA        94608

11/30/99

Date

AI000073

AO 245B (Rev. 8/96) Sheet 5, Part A - Criminal Monetary Penalties

Judgment-Page ___2___ of ___3___

DEFENDANT:    ALIBRIS, as successor-in-interest to Interloc, Inc.

CASE NUMBER:    3:99CR30036-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|           | Assessment    | Fine          | Restitution |
|-----------|---------------|---------------|-------------|
| Totals:   | $    4,400.00 | $  250,000.00 | $           |

If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . .    $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court determined that the defendant does not have the ability to pay interest and it is ordered that:

The interest requirement is waived.

The interest requirement is modified as follows:

## RESTITUTION

The determination of restitution is deferred until ___ _____ . An Amended Judgment in a Criminal Case will be entered after such a determination.

The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | * Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---------------|------------------------|-------------------------------|------------------------------------------|
|               |                        |                               |                                          |

AI000074

| | Totals: | $ _____ | $ _____ |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for

AO 245B (Rev. 8/96) Sheet 5, Part B - Criminal Monetary Penalties

Judgment-Page __3__ of __3__

DEFENDANT: ALIBRIS, as successor-in-interest to Interloc, Inc.

CASE NUMBER: 3:99CR30036-001

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☐ in full immediately; or

B ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐ not later than _____ ; or

D ☐ in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E ☐ in _____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

ANY MONETARY LOSS SHALL BE PAID TO VICTIMS WITHIN 6 MONTHS

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

AI000075

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                          )    CRIMINAL NO. ~~00~~ 1: 01 cr 10245 mlw
         v.               )    VIOLATION:
                          )    18 U.S.C. § 371-
                          )    Conspiracy
BRADFORD C. COUNCILMAN,   )
         Defendant.       )

## INDICTMENT

COUNT ONE:    18 U.S.C. § 371 - Conspiracy

The Grand Jury charges:

    At all times material to this Indictment:

    1.   Defendant BRADFORD C. COUNCILMAN was an individual who
resided in Montague, Massachusetts, and was a vice president and
shareholder of Interloc, Inc. and its successor corporation
Alibris.

    2.   Until on or about May 8, 1998, Interloc, Inc.
("Interloc") was a Washington business corporation with a
principal place of business in Greenfield, Massachusetts.
Interloc was an on-line subscription list service for
booksellers, and also did business under the name Valinet as an
electronic service provider in the Greenfield, Massachusetts
area.

    3.   On or about May 8, 1998, Interloc merged into Alibris,
a California business corporation, with a principal place of
business in Emeryville, California.

    4.   Among defendant BRADFORD C. COUNCILMAN's duties was to



operate, together with others, the electronic communications
service provided by Internet Service Provider Valinet and the
book dealer subscription list service operated by Interloc.

5.    From in or about January 1998 through in or about June
1998, at Greenfield, in the District of Massachusetts, and
elsewhere,

### BRADFORD C. COUNCILMAN,

defendant herein, did knowingly, willfully and unlawfully
combine, conspire and agree with others known and unknown to the
Grand Jury, to commit offenses against the United States, to wit,

(a) to intentionally intercept and endeavor to intercept
electronic communications, in violation of Title 18, United
States Code, Section 2511(1)(a);

(b) to intentionally disclose, and endeavor to disclose, to
other persons the contents of electronic communications, knowing
and having reason to know that the information was obtained
through the unlawful interception of electronic communications,
in violation of Title 18, United States Code, Section 2511(1)(a);

(c) to intentionally use, and endeavor to use, the contents
of electronic communications, knowing and having reason to know
that the information was obtained through the unlawful
interception of electronic communications, in violation of Title
18, United States Code, Section 2511(1)(c); and

(d) to cause a person and entity providing an electronic

2

communication service to intentionally divulge the contents of communications while in transmission on that service to persons and entities other than the addressee, intended recipient of such communication, or an agent of the addressee or intended recipient, in violation of Title 18, United States Code, Section 2511(3)(a).

### Object of the Conspiracy

6.   It was the object of the conspiracy to intercept, store, disclose, and use electronic communications to which Interloc and the conspirators were not party, for the commercial advantage of Interloc's book dealer business, in violation of Title 18, United States Code, sections 2511(1)(a), (c), (d), and (3)(a). In particular, the ultimate object of the conspiracy was to exploit the content of electronic mail from Amazon.com to dealers in order to develop a "most wanted" list of books, to learn about competitors, and for other commercial purposes entirely unrelated to the delivery of the electronic communications the conspirators intercepted.

7.   The interceptions, storage, disclosure, and use of the electronic mail messages were not for any legitimate purpose related to the maintenance of Interloc's electronic communications system, nor were they a necessary incident to the rendition of the communications service, nor to the protection of the rights or property of the provider of that service.

3

## Manner and Means of the Conspiracy

8.    At all times material to this Indictment, Interloc
provided certain of its book dealer customers with an electronic
mail address and acted as an electronic communications service
provider with respect to the transmission of electronic mail to
and from those dealers. . In other words, a particular dealer
could send and receive electronic mail via Interloc using an
address designated dealer@interloc.com.

9.    From at least 1996, Interloc employees, including
COUNCILMAN, routinely read the contents of private communications
to and from its member dealers, without their knowledge or
permission.  They did so for reasons of commercial advantage and
private commercial gain, and not as a necessary incident to the
transmission and delivery of the electronic messages, or to
protect or maintain the communications system or the rights of
the provider.  In particular, Interloc employees, including
COUNCILMAN, read electronic mail to and from customers of
competitors bibliofind.com and Advanced Book Exchange (ABE) in
order to create competitive advantage and to develop leads for
new subscribers.  They also routinely monitored the traffic of
messages from Amazon.com to subscribers.

10.    In or about January, 1998, COUNCILMAN approached
Interloc's computer systems administrators to write computer code
to intercept and copy all communications from Amazon.com to

subscriber dealers.  The purpose of this interception was to develop information that would lead to a competitive advantage for Interloc and enable it to develop a new business plan for Interloc's book business.  The plan to intercept and copy messages had nothing to do with the transmission and delivery of electronic communications.

11.  In January, 1998, at COUNCILMAN's direction and under his supervision, Interloc's systems administrator wrote a revision to the mail processing code, known as procmail.rc, designed to intercept, copy, and store, on an on-going and prospective basis, all incoming messages from Amazon.com.

12.  The procmail.rc script worked to intercept incoming electronic mail messages before they were delivered to the intended recipient's electronic mailbox and before the message was read by the intended recipient.  During the course of the conspiracy, thousands of electronic mail messages were intercepted and then stored for the purpose of analyzing the contents for commercial purposes relating to the bookselling business.

13.  In or about early June, 1998, Councilman and others devised a plan to create a database of commercial information, including a "most wanted" list, derived from the electronic messages intercepted from Amazon.com.

5

## Overt Acts

14.   In furtherance of the conspiracy and to effect its object, the following overt acts took place in the District of Massachusetts:

a.   In or about January, 1998, defendant BRADFORD C. COUNCILMAN instructed two employees of Interloc, including systems administrator Michael Warchut, to alter the script of the procmail.rc computer routine so that certain categories of electronic mail messages, including all mail from Amazon.com, would be intercepted, filtered, and routed to a computer file.

b.   In or about January 1998, systems administrator Michael Warchut wrote and implemented the altered procmail.rc script to effect the interception COUNCILMAN had instructed him to cause. Warchut caused the intercepted messages to be stored for later analysis in a computer file called "nile" on the Interloc "host" computer.

c.   From on or about April 13, 1998, to on or about May 4, 1998, at least 3,067 electronic mail messages were intercepted by means of the procmail.rc device and stored in the "nile" file on Interloc's "host" computer.

d.   On or about April 13, 1998, COUNCILMAN disclosed to Russ Klein and others an electronic mail communication from Amazon.com dated April 7, 1998, to which neither COUNCILMAN nor any of the persons to whom he disclosed it was a party.

6

COUNCILMAN made the disclosure to promote Interloc's commercial advantage as an on-line bookdealer and list service, and not for any purpose related to the delivery of the communication to the intended recipient.

e.    In or about May, 1998, Warchut altered the procmail.rc script to change the computer location on which intercepted electronic mail messages would be stored from the Interloc "host" computer to the "blizzard" computer.

f.    On or about June 3, 1998, COUNCILMAN disclosed to Martin Manley and others an electronic mail communication from Amazon.com dated June 1, 1998, to which neither COUNCILMAN nor any of the persons to whom he disclosed it was a party. COUNCILMAN made the disclosure to promote Interloc's commercial advantage as an on-line bookdealer and list service, and not for any purpose related to the delivery of the communication to the intended recipient.

g.    Between on or about June 3, 1998, and June 8, 1998, at least 858 electronic mail communications, to which Interloc was not a party, were intercepted by use of the procmail.rc device and stored on the "blizzard" computer system.

All in violation of Title 18, United States Code, Section 371.

7

COUNT TWO:     18 U.S.C. § 371 - Conspiracy

The Grand Jury charges further:

15.  The allegations contained in paragraphs 1 through 4 are repeated and incorporated herein.

16.  In or about April 1998, at Greenfield, in the District of Massachusetts and elsewhere,

BRADFORD C. COUNCILMAN,

defendant herein, did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit, to intentionally access a computer without authorization and to exceed authorized access, and thereby to obtain information from a protected computer for the purposes of commercial advantage and private financial gain, which conduct involved interstate communication, in violation of Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B).

## Object of the Conspiracy

16.  It was the object of the conspiracy to obtain access to private portions of the computer system, including the website, of Studio 32, a computer software development firm located in San Francisco, California, and to obtain private information therefrom in order to prove that the unauthorized access had occurred.

17.  The conspirators' purpose in obtaining unauthorized

8

access and in obtaining the private information was to demonstrate the weakness in Studio 32's own computer security system and the relative superiority of the conspirators' skills. COUNCILMAN and the other conspirators hoped to convince Alibris executives that Studio 32's involvement in Alibris's computer upgrade project was unnecessary and that the Interloc operation headed by COUNCILMAN was better equipped to do the job.

18.   Studio 32's computer system was a "protected computer" within the meaning of Title 18, United States Code, Section 1030(e)(2)(B), in that the system was used in interstate and foreign commerce and communication.

Overt Acts

19.   In furtherance of and to effect the object of the conspiracy, the following overt acts were committed in the District of Massachusetts:

a.   In or about late March 1998, the systems administrator of Interloc gained unauthorized access to the Studio 32 computer network through the Windows NT operating system using a hole in the system's password program.   This conduct required interstate communication between Massachusetts and California.

b.   Shortly thereafter, COUNCILMAN instructed the systems administrator to again gain unauthorized access to Studio 32's system and retrieve information in order to prove that the unauthorized access had been obtained.

9

c.    On or about March 30, 1998, the systems administrator, upon COUNCILMAN's instruction, gained unauthorized access to the system, including computers named "rover", "belvedere", "lam", "mcfrimobile", "bootsy", "vc1", and "vc2", and thereby obtained private information from Studio 32's protected computer, including confidential business information.

d.    On or about April 1, 1998, COUNCILMAN reported to Alibris that Studio 32's system was insecure, and stated, "This morning we looked at everything from their accounting data to their contact database, as well as documents relating to our project and their other customers as well. . . .  I'm starting to think in terms of 'let's give them another 8 hours on this, and then fire them!' . . .  My guys are starting to look better and better (and cheaper too). . . .".

All in violation of Title 18, United States Code, Section 371.

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 01-10245-MAP |
| v. | ) |
| | ) |
| BRADFORD C. COUNCILMAN | ) |

### DISMISSAL OF COUNT TWO OF THE INDICTMENT

Michael J. Sullivan, the United States Attorney for the District of Massachusetts, pursuant

to Rule 48(a) of the Federal Rules of Criminal Procedure, hereby dismisses Count 2 of the above-

captioned Indictment, charging a violation of Title 18, United States Code, Section 371

(conspiracy to violate Title 18, United States Code, Section 1030(a)(2)). In light of recent

developments in the relevant case law, the interests of justice are served by dismissal of this

Count.

MICHAEL J. SULLIVAN
United States Attorney

dated: June 5, 2003

By

PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147

Leave to file granted:

_____
MICHAEL A. PONSOR
United States District Judge

dated: _____

## CERTIFICATE OF SERVICE

I hereby certify that on this day I will cause a true copy of the above document to be served by First Class Mail upon counsel of record for defendant, addressed as follows:

> Andrew Good, Esq.
> Silverglate & Good
> 83 Atlantic Avenue
> Boston, MA 02110-3711

Dated: June 5, 2003

Paul G. Levenson