UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRADFORD C. COUNCILMAN,

        Plaintiff,

v.

ALIBRIS, INC.
MICHAEL WARCHUT
PETER KROTKOV

        Defendants.

Civil Action No. 04-30208-MAP

**COUNCILMAN'S OPPOSITION TO THE ALIBRIS AND KROTKOV MOTIONS TO DISMISS**

Andrew Good, BBO # 201240
Matthew Zisow, BBO # 658726
GOOD & CORMIER
83 Atlantic Avenue
Boston, MA 02110
Tel. (617) 523-5933
Fax (617) 523-7554

*Counsel for the plaintiff*

**INTRODUCTION**

Defendants Alibris and Krotkov have moved under Rule 12(b)(6) to dismiss Councilman's complaint. This Court should deny both motions, except for Alibris' motion to dismiss Councilman's 93A claim. Councilman voluntarily dismisses that claim. Each other claim should survive.

**APPLICABLE LEGAL STANDARDS**

A 12(b)(6) motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 47 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957)). "[T]he allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are taken to be true." *Blank v. Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 407 (1995).

**ARGUMENT**

**I.     Each of Councilman's claims was timely filed.**

Alibris and Krotkov assert that Councilman filed Counts Two (Abuse of Process) and Three (Intentional Infliction of Emotional Distress) too late. They are wrong. Neither claim accrued until, at the earliest, the day Councilman was indicted. Councilman filed his complaint less than three years after he was indicted. Both claims were filed on time.

**A.     The Abuse of Process Claim**

"[A]n action for abuse of process accrues on the date the prior proceeding was filed" – that is, the date the "process" caused by the tortious conduct actually issued. *Britton v. Thompson*, 1999 Mass. Super. LEXIS 166, *8 (Mass. Super. Ct. Mar. 30, 1999). "'Process' refers to the papers issued by a court to bring a party or property within its jurisdiction." *Jones v.*

- 1 -

*Brockton Public Markets, Inc.*, 369 Mass. 387, 390 (1975).  In this case, the defendants caused "process" to issue against Councilman in the form of an indictment.  That indictment issued on July 11, 2001.  Compl. ¶ 108.  That is when Councilman's abuse of process claim accrued.  Because he filed his complaint less than three years later, on July 9, 2004, Councilman filed his abuse of process claim within the limitations period.

The defendants assert that an abuse of process claim accrues on the date of the last statement that (eventually) causes process to issue.  Alibris Memo. at 11-12; Krotkov Memo. at 11-12.  That cannot be.  Unlike defamation, abuse of process does not address a malicious statement by itself, but the unwarranted judicial process that that statement causes.  That is why the issuance of "process" is a necessary element of an abuse of process claim.  *Gutierrez*, 437 Mass. at 407.  Just as a malicious prosecution claim does not accrue until all of its necessary elements occur, *see Bose Corp. v. Consumers Union of United States, Inc.*, 367 Mass. 424, 427 n.1 (1975), an abuse of process claim does not accrue until "process" has issued.  That is what the court in *Britton v. Thompson* meant by "an action for abuse of process accrues on the date the prior proceeding was filed." *Britton v. Thompson*, 1999 Mass. Super. LEXIS at *8.  Because Councilman filed his complaint less than three years after his abuse of process claim accrued, that claim was timely filed.

### B. The Intentional Infliction of Emotional Distress Claim

Councilman claims that he suffered emotional distress when he discovered that he had been indicted.  Compl. ¶¶ 128-131.  He does not, as the defendants suggest, claim (actionable) emotional distress from the fact that he had been lied about, or swept into a federal criminal investigation, or forced to resign from the Alibris Board, or fired.  Alibris Memo. at 15; Krotkov Memo. at 13.

Where the "resulting damage" of extreme and outrageous conduct is "inherently unknowable" until some time after the conduct occurs, "the statute of limitations is tolled until a plaintiff discovers, or reasonably should have discovered, that [he] had been harmed." *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 699 (2000) (quotations and citations omitted). Even if Councilman knew that the defendants had lied about him and caused him to be swept into a criminal investigation, he could not have known about the "resulting damage" of that conduct – his indictment – until July 11, 2001, when the indictment issued. Councilman filed his complaint less than three years after the earliest possible date when he could have discovered the "resulting damage" of the defendants' lies. His intentional infliction of emotional distress claim was timely filed.

## II.     Councilman pled all necessary elements of each claim.

### A.  Malicious Prosecution

The elements of a malicious prosecution claim are "(1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff." *Gutierrez*, 437 Mass. at 405. Alibris and Krotkov contend that no defendant initiated Councilman's criminal prosecution and that, in any event, that prosecution has not terminated in Councilman's favor. Both contentions miss the mark, particularly at the 12(b)(6) stage.

#### 1.     The complaint properly alleges that the defendants initiated Councilman's criminal prosecution.

"It is well established that a person need not swear out a criminal complaint in order to be held answerable for malicious prosecution." *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991). "[A] wide range of defendants can be liable for 'initiation' of a malicious prosecution under appropriate circumstances when they are more than mere passive conduits of information."

*Limone v. United States*, 271 F. Supp. 2d 345, 358 (D. Mass. 2003). It is also true, as the defendants point out, that "[t]he mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution." *Correllas*, 410 Mass. at 318. But that is far from what the complaint alleges happened in this case.

Warchut and Krotkov made Councilman the target of a criminal investigation by telling investigators their false Amazon.com story. Compl. ¶¶ 60-64. They continued to initiate Councilman's criminal prosecution by repeating their lies to Alibris executives, investigators and the grand jury. Compl. ¶¶ 65-83. In addition to being vicariously liable for Warchut's conduct (discussed below), Alibris played an active role in initiating Councilman's criminal prosecution. It deliberately supplied false and misleading information about Councilman to investigators from the spring through the fall of 1999. Alibris adopted Warchut's lies as its own, facilitated and benefited from Warchut's ongoing duplicity. Along with Warchut and Krotkov, Alibris provided the foundation upon which Councilman's criminal prosecution was mounted. Compl. ¶¶ 86-107.

Taking Councilman's allegations to be true, the defendants "initiated" Councilman's criminal prosecution. But for Warchut's and Krotkov's lies, Councilman would not have been investigated in the first place. But for the steady stream of lies and misinformation all of the defendants fed the investigators from the fall of 1999 through the spring of 2001, Councilman would not have been indicted. "[A] person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated … by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." *Mitchell v. City of Boston*, 130 F. Supp. 3d 201, 215 (D. Mass. 2001) (citation omitted).

Contrary to what the defendants suggest, it does not matter that the investigators and prosecutors and grand jury members made some decisions during the investigation that helped formalize the decision to prosecute Councilman. As Judge Posner has written:

> [A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial – none of these decisions will shield [defendants] who deliberately supplied misleading information that influenced the decision …. They cannot hide behind the officials whom they have defrauded.

*Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

### 2. The complaint properly alleges that the proceedings have terminated in Councilman's favor.

Alibris and Krotkov argue that the criminal prosecution has not terminated in Councilman's favor because the indictment was dismissed on what they call "technical legal grounds." Alibris Memo. at 8-9; Krotkov Memo. at 9. The defendants suggest that a "favorable termination" requires a ruling that the plaintiff did not, as a matter of historical fact, commit the acts alleged in the indictment. For good reason, that is not the law.

Both counts of Councilman's indictment were dismissed before trial.[1] Compl. ¶¶ 109 & 110. The dismissal of an indictment constitutes a "favorable termination" for the purposes of a malicious prosecution claim so long as "the reasons stated [are] consistent with the innocence of the accused. The circumstances of the abandonment must compel an inference that there existed a lack of reasonable grounds to pursue the prosecution." *Wynne v. Rosen*, 391 Mass. 797, 800-

---

[1] The *en banc* First Circuit currently has under advisement the government's appeal of this Court's dismissal of the Wiretap Act count. Because of the possible impact of the First Circuit's ruling on certain aspects of this case, Councilman agreed to give all defendants thirty days after the First Circuit's decision to answer or otherwise respond. *See* docket numbers 5 & 7. Out of the blue, Alibris and Krotkov elected to proceed with their 12(b)(6) motions. That was their choice and, according to this Court, their right. But having timed their motions the way they did, the defendants should not be permitted to *exploit* the Wiretap Act charge's uncertain future (as both have tried to do). *See* Alibris Memo. at 10 n.4; Krotkov Memo. at 9 n.1.

01 (1984). The *Wynne* rule applies equally to dismissals by a prosecutor and those ordered by a judge. *Britton v. Maloney*, 196 F.3d 24, 31 (1st Cir. 1999) (interpreting *Wynne*) ("[T]he fact that a criminal prosecution is dismissed by a trial judge instead of nol prossed by a district attorney makes little difference.").

Under *Wynne*, a "favorable termination" does not require a ruling that a criminal defendant did not in fact commit the acts underlying the indictment. Consider *Wynne* itself. The plaintiff and defendant were business partners. The defendant swore out a complaint in the district court accusing the plaintiff of stealing $4,000. On the Commonwealth's motion, the district court dismissed the complaint. In his motion, the assistant district attorney stated that "[t]he allegations involved in this complaint are essentially civil in nature – one of many disputes between two former partners or associates in a now bankrupt business." *Id*. at 798. Though that explanation said nothing at all about whether the defendant had, in fact, stolen the $4,000, the SJC concluded the dismissal "indicates a lack of reasonable grounds to prosecute. Clearly, this implies the innocence of the accused." *Id*. at 801.

In *Noel v. Town of Plymouth*, 895 F. Supp. 346 (D. Mass. 1995) (interpreting Massachusetts law), the trial court dismissed criminal charges against the plaintiff because the booking photo had been lost and/or the complaining witness failed to appear to testify. This Court concluded that even under those circumstances – what Alibris and Krotkov might call "technical legal grounds" – the plaintiff could establish a "favorable termination." This underscores that under *Wynne*, the question is not whether, as Alibris phrases it, "the plaintiff was factually innocent of the allegations against him," Alibris Memo. at 9-10, but whether the circumstances of the dismissal indicate the lack of reasonable grounds to prosecute.

- 6 -

The *Wynne* rule makes good sense. Unless dismissal could suffice to establish a "favorable termination,"

> [W]e would, in effect, impose on the criminal defendant the burden of objecting to the nolle prosequi in order to preserve a right to litigate civilly …. [T]he societal interest involved cannot extend so far as to compel individuals charged with criminal offenses – and who may desire civil retribution – to resist dismissal of the charges.

*Wynne*, 391 Mass. at 802. *Accord Britton v. Maloney*, 196 F.3d at 31 ("[A] criminal defendant should not have to risk a trial on the merits simply to preserve his ability to sue for malicious prosecution later."); *Gouin v. Gouin*, 249 F. Supp. 2d 62, 72 (D. Mass. 2003) (interpreting Massachusetts law).

Councilman's complaint alleges that both counts of his indictment were dismissed, Compl. ¶¶ 108-110, and that the nature of both dismissals constitutes "favorable termination." Compl. ¶ 115. The complaint also alleges that the defendants knew (or recklessly failed to learn) that Councilman had not ordered anyone to write the Amazon.com e-mail "interception" program, Compl. ¶¶ 61, 73, 79, 104; that Warchut and Alibris falsely implicated Councilman in connection with the Studio 32 Hack, Compl. ¶ 80, 105; and that Alibris knew or recklessly failed to learn that Warchut and Krotkov had told multiple inconsistent versions of their false Amazon.com story throughout the investigation. Compl. ¶ 104.

It is reasonable to infer from the complaint's detailed explanation of a three-year federal criminal investigation that Councilman, through counsel, communicated to the prosecutors (before they decided to dismiss the Studio 32 count) his position that the defendants had falsely implicated him, and that he had not ordered Warchut to hack into the Studio 32 computers. Discovery will shed light on the actual reasons prosecutors voluntarily dismissed the Studio 32 count. And whatever discovery yields, the fact that the Amazon.com count, even if true, did not

charge a crime, certainly evinces a lack of "reasonable grounds to prosecute." Councilman should not have to endure a trial on the merits to prove that he did not do something that is not even a crime, merely to preserve his right to sue the people whose lies dragged him into the judicial process to begin with.

Taking all of the complaint's allegations to be true, it cannot be said now, before discovery, that Councilman can prove no set of facts that would establish "favorable termination." Discovery is necessary to enable this Court to conduct the type of careful factual analysis of the circumstances surrounding the dismissals that *Wynne* requires. Councilman has adequately pled "favorable termination."

### B. Intentional Infliction of Emotional Distress

The elements of an intentional infliction of emotional distress claim are "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). Alibris argues that "an alleged failure to challenge or correct the actions of another that will result in injury to the plaintiff does not amount to extreme or outrageous conduct that passes all bounds of decency." Alibris Memo. at 17. But that is not true in all cases – and it does not relieve Alibris of liability in this one.

Whether conduct is "extreme or outrageous" is quintessentially a jury question. *See Agis*, 371 Mass. at 145-46. Consistent with the plaintiff-friendly standards on a 12(b)(6) motion, a

judge deciding whether a plaintiff has adequately pled "extreme and outrageous" conduct must bear in mind that "[a] trier [of fact] would be entitled to put as harsh a face on the actions of the [defendants] as the basic facts would reasonably allow." *Richey v. Am. Auto Ass'n*, 380 Mass. 835, 839 (1980). Moreover, "the jury are entitled to draw reasonable inferences from the totality of circumstances …. Repeated [conduct] … may compound the outrageousness of the incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress." *Boyle v. Wenk*, 378 Mass. 592, 595 (1979).

Councilman's complaint alleges a course of conduct on Alibris' part that a jury could consider "extreme and outrageous." The complaint alleges nothing less than that Alibris, knowing that it could wreck Councilman's life, actively participated in initiating and fueling a three-year criminal investigation that eventually caused Councilman to be indicted for various acts he did not commit and that, in any event, were not crimes. The complaint alleges that Alibris knew its own employee, Warchut, had engaged in all of the conduct in question, and had sought to mitigate his own perceived criminal liability (and protect his employer's interests) by triggering the investigation with what Alibris knew or recklessly failed to learn were lies; that Warchut and his friend Krotkov had continued to peddle those lies throughout the investigation. Even in the face of what it knew or should have known about Warchut, Alibris did not set the record straight with the investigators. Instead, it adopted Warchut's lies as its own by seeking and obtaining credit for it as part of its "cooperation" with the government. Nor did Alibris fire or discipline Warchut in any way, even after he pled guilty to committing federal crimes. Instead, it paid for Warchut's lawyer and, as of the date of the complaint, continued to employ him. The complaint alleges that Alibris deliberately devastated Councilman's life to protect its own bottom line.

Councilman's allegations, if established at trial, would unquestionably warrant a jury's conclusion that Alibris' conduct from 1999 through 2001 was "extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community." *Agis*, 371 Mass. at 144. *See, e.g., Limone v. United States*, 271 F. Supp. 2d at 363 ("There can be little doubt that the acts of law enforcement personnel who framed innocent men for murder give rise to a claim of intentional infliction of emotional distress under Massachusetts law."); *Gouin v. Gouin*, 249 F. Supp. 2d at 68-9 & 73-4 (concluding that plaintiff had stated a claim for intentional infliction of emotional distress where she alleged that the defendant had attempted to file three unwarranted criminal complaints against her). Councilman's allegations exceed in severity those found sufficient in *Agis* itself. There, the SJC held that the plaintiff could recover for intentional infliction of emotional distress where her employer fired her without good cause in front of her co-workers, and where the plaintiff alleged that she "became greatly upset, began to cry, sustained emotional distress [and] mental anguish." *Agis* at 141.

### III.     No privilege shields the knowingly false statements that wrongfully triggered the investigation of Councilman.

Alibris and Krotkov correctly note that statements made in the "course of a criminal investigation or judicial proceedings" are absolutely privileged. Alibris Memo. at 10; Krotkov Memo. at 10. But that doctrine does not shield these defendants from liability. Warchut and Krotkov (and Alibris, by vicarious liability and/or ratification, discussed below) made knowingly false statements that caused authorities to begin investigating Councilman in the first place. Alibris supplied information early in the investigation based on Warchut's and Krotkov's lies, which Alibris knew or recklessly failed to learn were false. They made these statements before any investigators or prosecutors had begun to contemplate a criminal action against Councilman. No privilege protects those statements.

"Under Massachusetts law, statements made to police or prosecutors prior to trial are absolutely privileged if they are made in the context of a proposed judicial proceeding." *Correllas*, 410 Mass. at 320-21. On the other hand, statements made to police or prosecutors before a "criminal action or judicial proceeding [against the plaintiff has been] contemplated or proposed" are only conditionally privileged. *Id*. at 322-23 (collecting conditional privilege cases). If a statement is conditionally privileged, "the plaintiff has the right, notwithstanding the privileged character of the communication, to go to the jury, if there be evidence tending to show actual malice …. Where the jury finds that the defendant did not have probable cause when it caused the statements to be uttered, the jury may infer that they were uttered with actual malice." *Seelig v. Harvard Coop. Society*, 355 Mass. 532, 538 (1969) (citation and quotation omitted).

Outright lies, such as those that Warchut and Krotkov told investigators to initiate the investigation of Councilman, Compl. ¶¶ 60 & 61, satisfy the "actual malice" requirement. *See Conway v. Smerling*, 37 Mass. App. Ct. 1, 6 (1994) ("If … the story … told to the police … were an invention, cooked up to achieve some collateral objective, the element of malice … would be established."). And making false statements based on a source that one either does not or should not believe to be truthful, as Alibris did by crediting and supporting Warchut's lies in the early stages of the investigation, may also constitute "actual malice." *See Seelig*, 355 Mass. at 537 (malicious prosecution count properly submitted to jury where there was evidence from which the jury could have inferred that the defendant did not believe the plaintiff had committed a crime, and did not believe the statements of an individual who had implicated the plaintiff in the crime).

Councilman's complaint alleges that he would not have become the target of a criminal investigation but for the false Amazon.com story that Warchut and Krotkov invented and told to

- 11 -

investigators. Compl. ¶¶ 60-64. Those statements necessarily occurred before a "criminal action or judicial proceeding [against Councilman had been] contemplated or proposed." *Correllas*, 410 Mass. at 322-23. Because they were made with "actual malice," no privilege applies.

The complaint further alleges that as early as June 8, 1998, Compl. ¶ 90, Alibris knew about the Warchut-Krotkov story and, despite knowing or recklessly failing to learn that it was false, relied on those lies as the basis for its extensive cooperation with the investigators. Compl. ¶¶ 95-97, 104-107. Taking Councilman's allegations to be true, it cannot be said now, before discovery, that all of Alibris' statements occurred *after* the investigators and prosecutors had begun to contemplate a criminal case against Councilman. Because over three years passed between Alibris' first contact with investigators and Councilman's indictment, it is reasonable to infer that at least some of Alibris' actionable statements occurred before an absolute privilege attached.

In *Kipp v. Kueker*, 7 Mass. App. Ct. 206 (1979), the plaintiff alleged that the defendant had slandered him by accusing him of larceny in a conversation with a district attorney. That conversation occurred before any formal criminal proceedings had started. The defendant moved to dismiss under 12(b)(6), claiming that his statements, even if false, were absolutely privileged in that they were "communications preliminary to a proposed judicial proceeding." *Id*. After the trial court granted the motion to dismiss, the Appeals Court reversed. On the face of the plaintiff's complaint, it was "not completely clear that the alleged defamatory statements were made in preparation for, or preliminary to, a proposed judicial proceeding …. That being the case, the plaintiff has to be given the benefit of the doubt under rule 12(b)(6) standards, and it follows that the allegations … should have survived the motion." *Id*.

That reasoning applies here. It is clear that the statements Warchut and Krotkov made to trigger the investigation of Councilman are not absolutely privileged because they occurred before anyone had begun to contemplate a criminal case against Councilman. It is reasonable to infer that at least some of the statements Alibris made in the early stages of the investigation fall into the same category. In these circumstances, as *Kipp v. Kueker* makes clear, Councilman must get the benefit of any doubt.

## IV.    Alibris is liable for Warchut's tortious conduct

For the first time since Warchut started lying about Councilman in the spring of 1998, Alibris has tried to distance itself from him. Alibris argues that it cannot be liable for any of Warchut's conduct because even if it was tortious, it was outside the scope of his employment. Alibris Memo. at 5-7 (malicious prosecution); 13 (abuse of process); 17 (intentional infliction of emotional distress). Not so. Warchut's tortious conduct was within the scope of his employment. Even if it was not, Alibris is still liable for Warchut's torts because Alibris ratified them.

### A.    Alibris is vicariously liable for Warchut's torts because they were within the scope of Warchut's employment.

"An employer may be held vicariously liable for the intentional tort of an agent if the tortious act or acts were committed within the scope of employment." *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 404 (1990). "[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer[.]" *Wang Labs., Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 859 (1986) (citations omitted). Whether conduct was in the scope of employment is a question for the jury. *See Pinshaw v. MDC*, 33 Mass. App. Ct. 733, 734 (1992).

Councilman's complaint alleges that in the spring of 1998, Warchut was employed by Alibris as a computer systems administrator. Compl. ¶ 8. In that capacity, Warchut was responsible for maintaining and operating Alibris (then Interloc) computers. Alibris gave Warchut the authority to use Alibris computers and accounts for internal functions and to access the Internet. The complaint further alleges that Trooper Barrett began investigating hacker attacks that had been perpetrated over the Internet using Alibris computers and accounts. Compl. ¶¶ 28-54. Warchut admitted that he had stored various "hacker" programs on his Alibris computer, along with a copy of the UMass password file he had used to commit the Shaysnet Hack. Compl. ¶¶ 49-51. The complaint alleges that when investigators started asking Warchut questions about the various hacks he had committed using Alibris facilities, he feared that he had criminal exposure, Compl. ¶¶ 44, 54; it is reasonable to infer that Warchut understood that the investigation jeopardized Alibris' prospects of wooing Amazon.com and outside investors. As an employee of a growing technology company (in 1998), Warchut understood that his interests were tied to Alibris' prospects. It is also reasonable to infer that Warchut understood he had a duty to cooperate with an investigation of matters that had occurred "on his watch," on the very Alibris computer system he was in charge of administering.

A jury reasonably could infer that when he lied to investigators about Councilman (committing malicious prosecution, abuse of process and intentional infliction of emotional distress), Warchut was acting within the scope of his employment. As Alibris' computer systems administrator, Warchut had the authority (indeed, he had the obligation) to talk to government investigators about hacker attacks that had originated in Alibris' computers. As the employee of a growing technology company, Warchut had the authority to attempt to protect his employer from the adverse consequences that such an investigation could cause. In terms of the vicarious

liability analysis, it makes no difference that Warchut also wanted to protect himself, even if that was his primary motivation in lying about Councilman. *See Wang Labs.*, 398 Mass. at 859-60 ("The fact that the predominant motive of the agent is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority.").

This case is like *Pihl v. Morris*, 319 Mass. 577 (1946). In *Pihl*, an employee of a restaurant-equipment vendor told the police that Pihl had stolen from the vendor a dishwashing machine. That oral statement led to a larceny complaint against Pihl. After a jury acquitted him of the charge, Pihl sued both the company and the individual defendant for slander and malicious prosecution. He won judgments on both counts against both defendants – the corporate defendant was held vicariously liable for its employee's intentional torts. On appeal, the corporate defendant argued that it was not vicariously liable for its employee's defamatory statements, in that they were not within the scope of his employment. The SJC disagreed. Though the individual defendant had been employed to sell restaurant equipment (and not to talk to the police), "as the agent in charge of the business of the corporate defendant, which was the party primarily interested [in the allegedly stolen equipment], [it was] within the scope of the agent's authority [to talk with the police about matters concerning that equipment]." *Id*. at 581. The same goes for Warchut. The issue of vicarious liability should get to a jury.

> **B.     Even if Warchut's torts were not within the scope of his employment, Alibris is still liable because it ratified them.**

"It is a well-established principle that an employer is not only liable for torts committed by its servants acting within the scope of their employment but, 'by ratification may become responsible for such acts when committed in excess of their authority.'" *Pinshaw v. Metro. Dist. Comm'n*, 33 Mass. App. Ct. 733, 735 (1992) (quoting *White v. Apsley Rubber Co.*, 194 Mass. 97,

- 15 -

99 (1907)). "Among other factors which may be considered evidence of ratification on the part of a superior are a failure to investigate and discipline an employee, allowing an improper criminal prosecution to proceed, and failure to disavow an employee's unauthorized action and to mitigate the harm caused once the facts are ascertained. Even when the evidence supporting such an inference is slender, the question of ratification should be submitted to the jury under appropriate instructions." *Pinshaw* at 737 (quotations and citations omitted). *See also Conklin v. Consol. Ry. Co.*, 196 Mass. 302, 308 (1907) (finding sufficient evidence from which a jury could infer that the defendant had ratified its employee's malicious prosecution where the defendant knew about the prosecution before trial and did nothing to stop it from proceeding).

In *Pinshaw*, a police officer initiated a criminal action against the plaintiff after the plaintiff told the officer's police department superiors that the officer had violated his civil rights. The plaintiff sued the police department, claiming that the department was vicariously liable for its employee's malicious prosecution. The police department argued that it was not vicariously liable, in that the officer's conduct was outside the scope of his employment. The plaintiff argued that even if the malicious prosecution was outside the scope of employment, the police department was still liable because it had ratified the officer's conduct. The plaintiff requested, but did not receive, an adequate ratification instruction. The Appeals Court concluded that there was ample evidence of ratification to warrant the plaintiff's requested instruction. That evidence comprised testimony that the officer's superior knew that its officer had applied for a criminal complaint against the plaintiff and suspended the police department's investigation of the plaintiff's complaint pending resolution of the criminal case. "Accordingly," concluded the Appeals Court, "an appropriate instruction on ratification was required." *Id*. at 736.

> The jury should have been instructed to address the issue of ratification if they found that [the officer's] motivation for bringing the criminal complaint precluded

>   a determination that he acted within the scope of his official duties. In that event, the issue is whether ratification by [the officer's] superiors could be inferred from the circumstances …. [K]nowledge of [the officer's] retaliatory action may be evidence of ratification.

*Id*. at 736-37.

In *White v. Apsley Rubber Co.*, the defendant's bookkeeper initiated a criminal complaint against the plaintiff for the ulterior purpose of ejecting the plaintiff from the defendant's property. Both the company's president and one of its directors knew about the bookkeeper's actions, and "either assented, or declined to interfere" to prevent the malicious prosecution. *Id*. at 100. The SJC concluded that even if the bookkeeper had acted outside the scope of his employment, "there was evidence from which ratification could be found," and the company was vicariously liable for its employee's conduct.

*Pinshaw* and *Apsley Rubber* illustrate why Alibris's motion should fail. Like the defendants in those cases, Alibris was well aware that Warchut's and Krotkov's Amazon.com story had caused investigators to start investigating Councilman. Compl. ¶ 90. Despite knowing or recklessly failing to learn that Warchut had lied, Alibris neither disciplined nor fired Warchut. Compl. ¶ 95. Instead, Alibris assisted Warchut in fueling the criminal investigation of Councilman – both by joining Warchut in falsely implicating Councilman and by paying Warchut's legal fees. Compl. ¶ 104-107. Alibris not only stood by while an improper criminal prosecution proceeded (which was deemed sufficient to find ratification in *Pinshaw*), it actively participated in building the false case against Councilman. Alibris stood arm-in-arm with Warchut from the time Warchut triggered the investigation of Councilman through three years of investigation through the day Councilman was indicted. That is the very picture of ratification.

**CONCLUSION**

- 18 -

For the foregoing reasons, this Court should DENY the Alibris and Krotkov motions to dismiss, except for Alibris's motion to dismiss Councilman's 93A claim, which Councilman voluntarily dismisses.

DATED: April 5, 2005

Respectfully submitted,

/s/ Andrew Good
Andrew Good
BBO # 201240


/s/ Matthew Zisow
Matthew Zisow
BBO # 658726
GOOD & CORMIER
83 Atlantic Avenue
Boston, MA 02110
Tel. (617) 523-5933
Fax (617) 523-7554

*Attorneys for the plaintiff*