# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30208-MAP

BRADFORD C. COUNCILMAN,               )
                    Plaintiff          )
v.                                     )
                                       )    REPLY TO PLAINTIFF'S OPPOSITION
                                       )    TO ALIBRIS' MOTION TO DISMISS
ALIBRIS, INC.,                         )    PLAINTIFF'S COMPLAINT
MICHAEL WARCHUT,                       )
PETER KROTKOV,                         )
                    Defendants         )

## I.    Introduction

Alibris respectfully submits this reply memorandum in further support of Alibris' Motion

to Dismiss Plaintiff's Complaint and in reply to Plaintiff's Opposition to Alibris' Motion to

Dismiss Plaintiff's Complaint ("Plaintiff's Opposition").  For the Court's convenience, Alibris

has responded to plaintiff's arguments in the order in which those arguments appear in Plaintiff's

Opposition.  For the reasons set forth below and in the Memorandum in Support of Alibris'

Motion to Dismiss Plaintiff's Complaint, Alibris is entitled to dismissal, pursuant to Federal Rule

of Civil Procedure 12(b)(6), of all of the claims in plaintiff's complaint.[1]

In summary, Alibris cannot be liable to plaintiff for malicious prosecution because:  (1)

Alibris did not initiate proceedings against plaintiff; (2) the prior proceedings against plaintiff

have not terminated; (3) plaintiff would not be able to show that the prior proceedings terminated

in his favor; and (4) statements made by Alibris to investigators conducting a criminal

investigation were absolutely privileged.  Moreover, Alibris cannot be liable to plaintiff for

malicious prosecution based on a vicarious liability theory because: (1) Michael Warchut,

---

[1] Plaintiff has conceded to dismissal of the claims asserted against Alibris under Massachusetts General Laws ch. 93A in Count IV of the complaint. *See* Plaintiff's Opposition at 1.  Accordingly, judgment should enter for Alibris on Count IV of plaintiff's complaint.

Alibris' employee, did not initiate proceedings against plaintiff; (2) the prior proceedings against plaintiff have not terminated; (3) plaintiff would not be able to show that the prior proceedings terminated in his favor; (4) Warchut's communications with investigators conducting a criminal investigation were absolutely privileged; and (5) plaintiff has not alleged, and it can not be inferred, that Warchut was acting within the scope of his employment when he allegedly falsely implicated plaintiff in a conspiracy to intercept electronic communications, or that Alibris ratified Warchut's alleged misconduct.

Alibris cannot be liable to plaintiff for abuse of process because: (1) plaintiff failed to timely file his abuse of process claim; (2) Alibris did not initiate proceedings against plaintiff; and (3) statements made by Alibris to investigators conducting a criminal investigation were absolutely privileged.  Moreover, Alibris cannot be liable to plaintiff for abuse of process based on a vicarious liability theory because: (1) plaintiff failed to timely file his abuse of process claim; (2) Warchut did not initiate proceedings against plaintiff; (3) Warchut's communications with investigators conducting a criminal investigation were absolutely privileged; and (4) plaintiff has not alleged, and it can not be inferred, that Warchut was acting within the scope of his employment when he allegedly falsely implicated plaintiff in a conspiracy to intercept electronic communications, or that Alibris ratified Warchut's alleged misconduct.

Alibris cannot be liable to plaintiff for intentional infliction of emotional distress because: (1) plaintiff failed timely to file his intentional infliction of emotional distress claim; (2) plaintiff has not alleged extreme and outrageous conduct by Alibris and has, in fact, alleged nothing more than negligence on Alibris' part; and (3) Alibris' communications with investigators engaged in a criminal investigation were absolutely privileged.  Moreover, Alibris cannot be liable to plaintiff for intentional infliction of emotional distress based on a vicarious liability theory

2

because:  (1) plaintiff failed timely to file his claims of intentional infliction of emotional

distress; (2) Warchut's communications with investigators conducting a criminal investigation

were absolutely privileged; and (3) plaintiff has not alleged, and it can not be inferred, that

Warchut was acting within the scope of his employment when he allegedly falsely implicated

plaintiff in a conspiracy to intercept electronic communications, or that Alibris ratified

Warchut's alleged misconduct.

## II.     Argument

### 1.     Plaintiff's Abuse of Process and Intentional Infliction of Emotional Distress Claims Against Alibris Were Not Timely Filed

   **a. Abuse of Process.**   On the one hand, in an attempt to defeat Alibris' contention that

his abuse of process claim is time-barred, plaintiff asserts that "the defendants caused 'process'

to issue against [him] in the form of an indictment . . . issued on July 11, 2001." Plaintiff's

Opposition, p. 2.  On the other hand, in an attempt to state claims of abuse of process and

malicious prosecution — which cannot be based on cooperation with law enforcement officials

in an ongoing investigation — plaintiff apparently alleges that the defendants initiated

proceedings against him when defendants Peter Krotkov and Michael Warchut told a false story

to federal investigators, beginning in or around the spring of 1998 and continuing through the

spring of 2001, to divert law enforcement officers from focusing on their own activities.  *See*

Complaint, ¶¶ 46, 55-66, 90, 122; Opposition, p. 4.  Plaintiff cannot have it both ways.  If

plaintiff's abuse of process claim against Alibris is based on acts that occurred prior to and

during the spring of 2001, then that claim is barred by the three-year statute of limitations

because it was not brought until July 2004.

The case of *Britton v. Thompson* is not to the contrary. In the *Britton* case, plaintiff based his abuse of process claims on the allegation that the defendant had filed false criminal charges against him. The court concluded that the action for abuse of process accrued on the date the defendant filed the allegedly false charges, and dismissed the claim on statute of limitations grounds. *See Britton v. Thompson*, 1999 WL 1318995, *3 (Mass. Super. Ct. 1999). In this case, plaintiff alleges no act by any defendant after May 31, 2001, the date on which Warchut testified before the grand jury. There is no Massachusetts case addressing the accrual date for an abuse of process claim that is not based on an underlying act of filing allegedly unwarranted charges. Courts in other jurisdictions, however, have held that an abuse of process claim accrues on the date of the last act committed by the defendant about which the plaintiff complains. *See, e.g., Rothenberg v. Ralph D. Kaiser Co.,* 173 B.R. 4, 9 (Bankr. D.D.C. 1994) ("[c]ourts have held that a cause of action for abuse of process accrues when the last act complained of was committed"); *Commercial Equity Corp. v. Majestic Sav. and Loan Ass'n,* 620 P.2d 56, 57 (Colo. App. 1980) (when allegations in complaint referred to specific conduct by the defendants that occurred prior to and on June 1, 1973, plaintiff's claim for abuse of process accrued on June 1, 1973). When the last alleged misconduct by a defendant is testimony against a plaintiff, the abuse of process claim accrues on the date on which that testimony was provided. For example, in *Penn v. Iowa St. Bd. of Regents,* 577 N.W.2d 393 (1998), the court held that "plaintiff's abuse of process claim commenced from the date [the individual defendant] committed her last alleged act constituting abuse of process," which was testifying against the plaintiff. *Penn,* 577 N.W.2d at 400. According to the complaint in this case, the last alleged act by any defendant that could conceivably constitute abuse of process was Warchut's May 31, 2001 grand jury testimony.

Therefore, plaintiff's abuse of process claim accrued, at the latest, on May 31, 2001, and is barred by the statute of limitations.

      **b. Intentional Infliction of Emotional Distress.**  Plaintiff's contention that he timely filed his claim of intentional infliction of emotional distress against Alibris is frivolous.  Plaintiff bases his intentional infliction of emotional distress claim on "[d]efendants' [allegedly] false implication of an innocent man in connection with a federal criminal investigation."  Complaint, ¶ 130.  Accepting as true the allegations in the complaint, plaintiff knew, more than six years before he filed his complaint, that he had been falsely implicated in a federal criminal investigation.  *See* Complaint , ¶¶ 6, 90, 94.  The last act by Alibris alleged in the complaint was on November 29, 1999 when Alibris pled guilty to charges against it.  The last act by **any** defendant alleged in the complaint was on May 31, 2001, when Warchut testified before a grand jury.  *See* Complaint, ¶¶ 76, 99.  Plaintiff's claim of intentional infliction of emotional distress accrued, therefore, at the **very** latest, on May 31, 2001.  *See, e.g., Pagliuca v. City of Boston*, 35 Mass. App. Ct. 820, 824-825 (1994) (holding that claim of intentional infliction of emotional distress accrued on date of the last wrongful act by defendants that allegedly caused plaintiff's injury and dismissing claim as time-barred).

      Plaintiff seeks to avoid the time bar by invoking the "discovery rule," and contending that until he was indicted in July 2001, he "could not have known" that defendants' alleged tortious acts would result in injury to him.  Plaintiff's Opposition at 3.  The "discovery rule" is not applicable here.  That rule tolls the statute of limitations in a small class of cases in which a plaintiff **could not** have discovered a defendant's wrongful acts and the attendant injury until years after the defendant's allegedly wrongful behavior occurred.  The fact that a defendant does not yet know all the damage that will flow from an alleged wrong does not toll the statute of

limitations. "When an [alleged] injury . . . becomes manifest, the statute of limitations does not

stay in suspense until the full extent, gravity, or permanence of that same injury . . . is known."

*Pagliuca*, 35 Mass. App. Ct. at 824-825, *quoting Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.

App. Ct. 645, 649 (1984). The knowledge required for the claim to accrue is simply

"'knowledge that an injury has occurred.'" *Pagliuca*, 35 Mass. App. Ct. at 824, *quoting White v.*

*Peabody Constr. Co.,* 386 Mass. 121, 130 (1982). Plaintiff knew, by the summer of 1998, that

he had been injured by his implication in a federal criminal investigation based on allegedly false

allegations. His indictment on July 11, 2001 may have made clear the full gravity of the injury,

but plaintiff cannot reasonably contend that his alleged injury was inherently unknowable prior

to his indictment. *See, e.g., Pagliuca,* 35 Mass. App. Ct. at 824 (discovery rule applies only if

wrong is "inherently unknowable"). Further, if plaintiff did not suffer any "actionable emotional

distress" until July 11, 2001, the date of his indictment, then his claim of intentional infliction of

emotional distress is not cognizable, because his emotional distress was not "substantially

contemporaneous" with the defendants' allegedly outrageous conduct. *See Quinn v. Walsh*, 49

Mass. App. Ct. 696, 699 (2000) ("the manifestation of intentionally inflicted emotional injury

must be substantially contemporaneous with the alleged outrageous conduct").

Finally, plaintiff attempts to avoid the time bar by waiving any claim for emotional

distress arising before his July 11, 2001 indictment. Plaintiff's assertion that he does not claim

actionable emotional distress "from the fact that he had been lied about, or swept into a federal

criminal investigation, or forced to resign from the Alibris Board, or fired," Plaintiff's

Opposition, p. 2, is inconsistent with the allegations in his complaint and irrelevant. Plaintiff

cannot extend the statute of limitations by seeking to waive reliance on any events prior to July

11, 2001. *See Pagliuca*, 35 Mass. App. Ct. at 824 (plaintiff could not suspend operation of statute of limitations until date on which full extent of injury became apparent).

Plaintiff did not timely file his abuse of process and intentional infliction of emotional distress claims against Alibris, and for this reason, those claims should be dismissed.

### 2.    Neither Warchut Nor Alibris Initiated Criminal Proceedings Against Plaintiff

The complaint alleges no facts from which it can reasonably be inferred that Alibris or Warchut "initiated" plaintiff's prosecution. A private citizen's actions in providing information to law enforcement officials in connection with a criminal investigation that is already underway cannot initiate a prosecution, even if the information provided is false and implicates an innocent individual who would not otherwise have been indicted. That is the rule established by the Supreme Judicial Court in *Correllas v. Viveiros*, 410 Mass. 314 (1991), and it controls this case. Massachusetts law draws a distinction between those individuals who come forward "of their own free will," or who "encourage or demand" that law enforcement officials institute or continue criminal proceedings against an individual, and those who, like Warchut and Alibris, answer questions posed to them by law enforcement officers already engaged in a criminal investigation. The former may be liable for malicious prosecution. The latter cannot be, even if they provide false information.

The cases of *Limone v. United States,* 271 F. Supp.2d 345 (D. Mass. 2003) and *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), cited by plaintiff for the proposition that a claim of malicious prosecution may lie against a person who merely supplies "misleading information that influence[s] the [prosecutor's] decision [to proceed to trial]," are inapposite. The *Limone* and *Jones* cases are distinguishable from this case and from the *Correllas* case, because in *Limone* and *Jones*, the defendants were law enforcement officers acting under color of law, not

private citizens.[2]  As the court in the *Jones* case noted, "[i]f police officers have been

instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability

by pointing to the decisions of prosecutors or grand jurors." *Jones,* 856 F.2d at 994.  Warchut

and Alibris, however, are private parties.  With respect to private parties like Alibris and

Warchut, "[t]he mere transmission of information to a police officer, who using his or her

independent judgment, then pursues the matter and institutes criminal proceedings, has never

been held sufficient to support an action for malicious prosecution." *Correllas,* 410 Mass. at

321.  The rule in *Correllas* controls this case:  private individuals cannot be liable for malicious

prosecution or abuse of process if they merely respond – even if untruthfully – to requests for

information from law enforcement.  *See Conway v. Smerling*, 37 Mass. App. Ct. at 1, 4 (1994)

("if a citizen registers with the police an apprehension that a crime has been committed and

leaves the matter to the judgment and responsibility of the public officers, that citizen, though

having started the chain of events that led to legal process, cannot be charged with malicious

prosecution").

  The complaint alleges only that Warchut provided false information to law enforcement

officers already engaged in an investigation.  *See* Complaint, ¶¶ 48, 60, 66.  Because Warchut's

alleged actions do not constitute the "initiation" of proceedings against plaintiff, plaintiff's

claims of malicious prosecution and abuse of process against Warchut must fail.  Where Warchut

cannot be liable based on the allegations in the complaint, Alibris cannot be vicariously liable

based on alleged acts by Warchut.  As to Alibris, plaintiff's assertion that Alibris "deliberately

---

[2] In the *Limone* case, plaintiffs brought a malicious prosecution claim under the Federal Tort Claims Act, 28 U.S.C., §§ 1346, 2671 *et seq.*  against the United States and federal and state law enforcement officers who had allegedly manufactured evidence and suborned perjury to procure the prosecution of the plaintiffs for a murder the officers knew plaintiffs had not committed, while covering up the roles of individuals whom the law enforcement officers knew to be guilty of the murder.  In the *Jones* case, plaintiff brought claims for false arrest under state law, and for violation of civil rights under 42 U.S.C. § 1983, against law enforcement officers who had conspired to manufacture evidence and deny plaintiff access to exculpatory evidence, causing prosecutors to indict him for rape and murder.

supplied false and misleading information about [plaintiff] to investigators" goes far beyond the

allegations in the complaint, and does not constitute an inference that may reasonably be drawn

therefrom.[3]  *See* Plaintiff's Opposition at 4.  These assertions should be disregarded.  *See*

*McGrath v. MacDonald*, 853 F. Supp. 1, 2-3 (D. Mass. 1994) (in ruling on motion to dismiss,

court may consider only allegations in complaint) *citing O'Brien v. DiGrazia,* 544 F.2d 543 (1st

Cir. 1976, *cert. denied,* 431 U.S. 914 (1977).  Plaintiff acknowledges in his complaint that a

criminal investigation was already underway and focused on plaintiff before Alibris even learned

of the investigation.  *See* Complaint, ¶¶ 63, 90.  The complaint does not (and could not) allege

that Alibris encouraged or demanded the initiation or continuation of criminal proceedings

against plaintiff.  Under the *Correllas* case, Alibris cannot be liable for malicious prosecution or

abuse of process.  For these and other reasons, plaintiff's malicious prosecution and abuse of

process claims against Alibris should be dismissed.

### 3.    The Underlying Prosecution Did Not Terminate in Plaintiff's Favor

**a.    The Underlying Prosecution Has Not Terminated**.  As of the filing of

this reply, the United States Court of Appeals for the First Circuit still has under

advisement the government's appeal of the dismissal of the charges against plaintiff.  *See*

Plaintiff's Opposition at 5 n.1.  To assert a claim of malicious prosecution, a plaintiff must

plead, and be able to show, a final termination of prior proceedings against him, "such that

the proceeding cannot be brought again."  *Smith-Hunter v. Harvey,* 95 N.Y.2d 191-195-

196, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000).  So long as the government's appeal

remains pending—and, of course, if that appeal is decided adversely to plaintiff—the prior

---

[3] A number of arguments in Plaintiff's Opposition are based on allegations that do not appear in plaintiff's complaint and inferences that cannot reasonably be drawn based on the allegations in the complaint.  Attached hereto as Exhibit A is a chart listing arguments in Plaintiff's Opposition that are not supported by the allegations in the complaint.

criminal proceedings against plaintiff have not terminated and a malicious prosecution

claim therefore has not accrued. For this reason, plaintiff's malicious prosecution claim

must be dismissed.

       **b.    The Prior Proceedings did not terminate in plaintiff's favor.** For plaintiff to

sustain a claim of malicious prosecution, he must show that the underlying criminal proceeding

has terminated in his favor. When, as here, a criminal prosecution is dismissed by the court, or a

prosecutor abandons the underlying criminal proceedings by a dismissal, those actions are

deemed a favorable termination **only** if the "reasons stated for the . . . dismissal [or abandonment

are] consistent with the innocence of the accused." *Wynne v. Rosen,* 391 Mass. 797, 800 (1984).

Under Massachusetts law, plaintiff must show that the termination of proceedings "**compel[s]** an

inference that there existed a lack of reasonable grounds to pursue the prosecution." *Wynne*, 391

Mass. at 801 (emphasis supplied). Count I of the indictment against plaintiff was dismissed by

this Court on the ground that Amazon.com e-mails allegedly intercepted by plaintiff were in

electronic storage at the time of interception, and that their interception was not, therefore,

proscribed by the federal Wiretap Act. Count II (regarding the Studio 32 hack) was dismissed by

the prosecution "in light of recent developments in relevant case law." *See* Exhibit 3 to Alibris'

Memorandum in Support of its Motion to Dismiss. Neither of these actions compels an

inference that plaintiff is innocent of the "overt acts" alleged in his indictment – that he directed

Warchut and Krotkov to write computer code to capture Amazon.com e-mails; that he disclosed

the contents of Amazon.com e-mails to others; that he instructed Warchut to gain unauthorized

access to Studio 32's system and retrieve information in order to prove that unauthorized access

had been obtained; and that he reported the results of this intrusion to Alibris personnel. The

possibility that these overt acts may not constitute crimes is irrelevant in determining Warchut's

and Alibris' liability for malicious prosecution, since neither Warchut nor Alibris was responsible for determining whether the acts alleged constituted criminal behavior. For an action of malicious prosecution to lie, the dismissals must compel an inference that plaintiff did not engage in the **behavior** alleged. In this case, the indictments were not dismissed because the court or prosecutor concluded that plaintiff had not engaged in the conduct alleged or that someone other than plaintiff was responsible. As a matter of law, therefore, these dismissals do not constitute a "favorable termination" and do not permit an action for malicious prosecution.

### 4.    Plaintiff Has Not Alleged Extreme and Outrageous Behavior on the Part of Alibris

Plaintiff has not adequately alleged extreme and outrageous conduct by Alibris. The hyperbole in Plaintiff's Opposition notwithstanding, plaintiff does **not** allege in his complaint that Alibris "actively participated in initiating and fueling a three-year criminal investigation that eventually caused [plaintiff] to be indicted." Plaintiff's Opposition at 9. The complaint, in fact, fails to allege **any** affirmative act by **any** member of Alibris' management team designed to "scapegoat" plaintiff. "In a case such as this one, where the plaintiff has submitted an extremely detailed . . . complaint, such a glaring omission is undeniably significant." *Broderick v. Roache,* 751 F. Supp. 290, 294 (D. Mass. 1990). Had facts existed to support the contention that Alibris' management team took affirmative steps to initiate and fuel a three-year criminal investigation of plaintiff, those facts would have been included in the complaint. *See Broderick,* 751 F. Supp. at 294. They were not.

Fairly read, plaintiff's detailed complaint alleges nothing more than that Alibris failed to exonerate plaintiff when it knew or should have known that Warchut and Krotkov had falsely implicated him. *See* Complaint, ¶ 104. Such allegations cannot state an intentional tort claim. *See, e.g., Commonwealth v. Luna,* 410 Mass. 131, 137-138 (1991) (knew or should have known

is a negligence standard that is distinguished from the substantially higher test for intentional or reckless conduct). The allegation that Alibris failed to exonerate plaintiff when it knew or should have known that he had been falsely accused of a crime is insufficient, as a matter of law, to support a claim of intentional infliction of emotional distress against Alibris. *See, e.g., Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (to support claim of intentional infliction of emotional distress, plaintiff must show **even more** than that the defendant acted with tortious or criminal intent or with malice against plaintiff).

### 5. Alleged Statements Made by Alibris and Warchut in the Course of a Criminal Investigation Were Absolutely Privileged

"[A]bsolute immunity from suit has long been accorded to witnesses in judicial proceedings, even if their testimony is knowingly false. . . . This immunity is accorded not merely for statements made as part of a witness's testimony at trial, but for statements made 'in the context of a proposed judicial proceeding.'" *Kobrin v. Gastfriend,* 443 Mass. 327, 345-346 (2005) (dissent), *citing, inter alia, Correllas,* 410 Mass. at 321; *Sullivan v. Birmingham*, 11 Mass. App. Ct. 359, 361 (1981) ("absolute privilege applies to defamatory statements made 'in the institution or conduct of litigation'"). Communications with law enforcement officials in the course of an investigation are conditionally privileged only if "the defendants went to the police, or communicated with others, **on their own initiative** and published an accusation which might otherwise never have been known." *Correllas,* 410 Mass. at 322 (emphasis supplied); *see also Conway,* 37 Mass. App. Ct. at 4-5. Plaintiff has not alleged that Warchut, or, for that matter, any member of the Alibris management team, went to the police on his or her own initiative and thereby set in motion the investigation that resulted in plaintiff's indictment. *See* Complaint, ¶¶ 45, 60, 90. Warchut's statements to investigators, therefore, were absolutely privileged, as was Alibris' cooperation in an ongoing investigation. Alibris cannot be vicariously liable for

12

Warchut's absolutely privileged communications with law enforcement officials, nor can Alibris

be liable for its absolutely privileged cooperation in the ongoing investigation.

> **6.    Alibris is not Liable for Warchut's Actions Because It Cannot
> be Inferred that Warchut's Alleged Conduct was Motivated by
> an Intent to Benefit Alibris and Alibris did not Ratify
> Warchut's Alleged Conduct**

   **a. Scope of employment**.  The conduct of an employee is not within the scope of his or

her employment unless the conduct is motivated, at least in part, by an intent to benefit his or her

employer.  *See, e.g., Wang Labs, Inc. v. Business Incentives, Inc.,* 398 Mass. 854, 859 (1986).

Plaintiff's complaint alleges that Warchut and Krotkov sought to deflect the attention of law

enforcement officers from themselves by falsely alleging that plaintiff, a member of Alibris'

Board of Directors and its management team, had been involved in a scheme to intercept

Amazon.com e-mails.  *See* Complaint, ¶¶ 53-55; 59.  As a result of the investigation into the

interception of Amazon.com e-mails, Alibris pled guilty to criminal charges and paid a $250,000

fine.  *See* Complaint, ¶¶ 83-85, 99; *see also* Information and Judgment, attached as Exhibit A to

Alibris' Memorandum in Support of its Motion to Dismiss.

   The complaint does not allege, nor can it reasonably be inferred, that Warchut's alleged

conduct, which caused Alibris' indictment and led to its guilty plea, was motivated in any degree

by an intent to **benefit** Alibris.  It certainly cannot reasonably be inferred, as is contended by

plaintiff in his Opposition, that Warchut offered plaintiff up to "protect [Alibris] from the

adverse consequences" of the investigation.  *See* Plaintiff's Opposition at 14.  Unwarranted

inferences are not sufficient to meet a plaintiff's burden in opposing a motion to dismiss.  *See,*

*e.g., Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n. Inc.,* 357 F.3d 1, 9 (1st

Cir. 2004).  Warchut's alleged conduct was not within the scope of his employment and Alibris

therefore cannot be vicariously liable for that conduct.  *See, e.g., Wang Labs.,* 398 Mass. at 859;

*Schlicte v. Granite Sav. Bank*, 40 Mass. App. Ct. 179, 182 (1996) (employer could not be vicariously liable for bank teller's tortious behavior which was not intended to benefit her employer).

**b. Alibris Did Not Ratify Warchut's Behavior.**    Plaintiff contends that, even if Warchut's alleged misconduct was outside of the scope of his employment, Alibris ratified that conduct and is, therefore, vicariously liable for it.  Plaintiff is wrong.  Ratification is "the affirmance by a person of a prior act . . .which was done or professedly done **on his account**." Restatement (Second) of Agency § 82 (1958) (emphasis added).[4]   An employer may be vicariously liable for its employee's actions based on the doctrine of ratification only if the employee's action conferred a benefit on the employer.  *See, e.g., O'Neil v. National Oil Co.,* 231 Mass. 20 (1918) (defendant employer ratified employee's conduct when employer authorized work in advance and accepted payment for it); *White v. Apsley Rubber Co.*, 194 Mass. 97 (1907) (employer ratified its bookkeeper's wrongful use of criminal process to evict tenant when bookkeeper was responsible for management of the property and employer desired, and benefited from, eviction of tenant).  The complaint does not allege, nor can it reasonably be inferred, that Warchut's allegedly false implication of plaintiff was done to benefit Alibris. Accordingly, Alibris could not be found to have ratified Warchut's conduct.

The cases of *Apsley Rubber* and *Pinshaw v. Metropolitan Dist. Comm'n,* 33 Mass. App. Ct. 733 (1992), on which plaintiff relies, are not to the contrary.[5]  In the *Apsley Rubber* case, the

---

[4] Massachusetts cases discussing the issue of ratification generally adopt rules set forth in the Restatement of Agency.  *See, e.g., Pinshaw v. Metropolitan District Commission*, 33 Mass. App. Ct. 733, 735 (1992), *citing* Restatement (Second) of Agency § 218 (1958).

[5] The case of *Conklin v. Consol. Ry. Co.*, 196 Mass. 302, (1907) is inapposite.  The *Conklin* case is cited by plaintiff for the proposition that an employer may be found to ratify its employee's conduct when the employer knows about a wrongfully instituted prosecution and does nothing to stop it.  That characterization omits crucial facts that distinguish *Conklin* from the instant case.  The *Conklin* case involved an action for malicious prosecution brought against a railroad company.  The railroad's employee, a conductor, had scuffled with Conklin, and had then sworn

benefit was obvious: the court found that the defendant bookkeeper's tortious institution of criminal proceedings was within the scope of his employment as manager of the property or, if done in excess of his authority, was done for the benefit of his employer because the defendant employer, lessee of the premises occupied by the plaintiff, wanted plaintiff off those premises. *See Apsley Rubber Co.,* 194 Mass. at 99-100. The *Pinshaw* case simply does not address the issue of an employer's vicarious liability for an employee's improper institution of criminal proceedings. The sole issue in the *Pinshaw* case was whether an individual police officer employed by the Metropolitan District Commission was personally entitled to statutory indemnification when he instituted a criminal proceeding against the plaintiff in retaliation for a complaint made against him by the plaintiff. *See Pinshaw*, 33 Mass. App. Ct. at 734 & n.1. In this case, plaintiff has alleged that Warchut intended to protect **himself** against prosecution, **not** to benefit Alibris, when he "decided to attempt to persuade federal law enforcement authorities not to prosecute [him], or to give [him] favorable treatment" by providing allegedly false information about plaintiff. Complaint, ¶ 55. Contrary to plaintiff's assertion in his opposition, it cannot reasonably be inferred that Warchut intended to protect or benefit Alibris by alerting federal law enforcement authorities to an alleged scheme by plaintiff to intercept e-mails from one of Alibris' most important business partners. *See* Plaintiff's Opposition at 14.

---

out a criminal complaint against him. When Conklin approached a manager of the railroad concerning the criminal case, the manager indicated he had authority to drop the charge or permit it to continue. The court found that the manager's action – assuming control over the decision whether to prosecute Conklin – could constitute evidence of ratification. The facts of *Conklin* thus differ markedly from those alleged here. Plaintiff does not, and could not, allege that Alibris had the power to compel the government to drop its prosecution of plaintiff; indeed, Alibris itself was prosecuted, and pled guilty, as a result of plaintiff's alleged conduct.

Because plaintiff's complaint fails to allege, and a jury could not reasonable infer, that Warchut's alleged misconduct was intended to benefit Alibris, there is no basis for a finding of ratification and no basis for holding Alibris liable for Warchut's allegedly tortious acts.[6]

### III.     Conclusion

For the foregoing reasons, and for the reasons set forth in the Memorandum in Support of Alibris' Motion to Dismiss Plaintiff's Complaint, defendant Alibris respectfully requests that this Court dismiss all remaining counts in plaintiff's complaint against Alibris.

Respectfully submitted,

The Defendant,
ALIBRIS, INC.
By Its Attorneys:

Dated:  June 23, 2005

/s/ Katherine A. Robertson
Katherine A. Robertson
 BBO No. 557609
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115
Tel:  (413) 781-2820
Fax:  (413) 272-6804

301534

---

[6] Plaintiff claims that ratification is an issue of fact that must be submitted to a jury.  However, plaintiff is not entitled to submit the issue of ratification to a jury unless there are allegations that would, as a matter of law, support the claim of ratification (and, at the summary judgment stage, indicia of admissible evidence that would support the plaintiff's position on the issue).  No such allegations exist in this case, because it cannot reasonably be inferred that Warchut intended to benefit Alibris when he accused an Alibris officer and director of conspiring to intercept Amazon.com e-mails.

## EXHIBIT A

| Arguments in Plaintiff's Opposition to Motion to Dismiss | Omissions and/or Relevant Allegations in Complaint |
|---|---|
| **Page 4:** Krotkov and Warchut "continued to initiate Councilman's criminal prosecution by repeating their lies to Alibris executives, investigators and the grand jury." | The complaint does not allege communications from Krotkov or Warchut to any "Alibris executive." |
| "Along with Warchut and Krotkov, Alibris provided the foundation upon which Councilman's criminal prosecution was mounted." | No overt act by Alibris is alleged in the complaint. Alibris is alleged only to have negligently failed to exonerate plaintiff when it knew or recklessly failed to learn that Krotkov and Warchut had falsely implicated him. |
| "But for the steady stream of lies and misinformation all of the defendants fed the investigators from the fall of 1999 through the spring of 2001, Councilman would not have been indicted." | The complaint does not allege that Alibris fed any "lies" or any "misinformation" to investigators. |

| | |
|---|---|
| **Page 9:** "...Alibris, knowing that it could wreck Councilman's life, actively participated in initiating and fueling a three-year criminal investigation that eventually caused Councilman to be indicted for various acts he did not commit and that…were not crimes." | The complaint alleges no actions by Alibris with respect to the investigation other than "promis[ing] to cooperate fully with the government's ongoing investigation." |
| "Alibris knew its own employee, Warchut, had engaged in all of the conduct in question, and had sought to mitigate his own perceived criminal liability (and protect his employer's interests) by triggering the investigation with what Alibris knew or recklessly failed to learn were lies; that Warchut and his friend Krotkov had continued to peddle those lies throughout the investigation." | The Complaint does not allege that Alibris had any such knowledge. The Complaint alleges that Alibris knew or should have known: that plaintiff did not direct either Warchut or Krotkov to illegally intercept Amazon.com e-mails; that in the course of the investigation, Warchut and Krotkov told multiple inconsistent versions of the false story they concocted; and that plaintiff did not direct Warchut to illegally obtain access password protected confidential data stored in the Studio 32 computers. The complaint does not allege that Warchut sought to protect Alibris' interests by falsely implicating plaintiff. |
| Alibris "adopted Warchut's lies as its own by seeking and obtaining credit for it as part of its cooperation with the government." | The complaint does not allege that Alibris sought and obtained credit for Warchut's alleged lies by adopting those alleged lies. |
| "Alibris deliberately devastated Councilman's life to protect its own bottom line." | The complaint alleges only that Alibris knew or should have known that, in the course of the investigation, Warchut and Krotkov falsely implicated plaintiff. |

2

| | |
|---|---|
| **Page 12:** As early as June 8, 1998, "Alibris knew about the Warchut-Krotkov story and, despite knowing or recklessly failing to learn that it was false, relied on those lies as the basis for its extensive cooperation with the investigators." | The complaint does not allege that Alibris knew about the Warchut-Krotkov story as early as June 8, 1998, or at any other time. The complaint does not allege that Alibris relied on lies by Warchut and Krotkov as the basis for its cooperation with investigators.  The complaint does not allege that Alibris' cooperation was extensive.

The complaint alleges only that "[o]n or about June 8, 1998, the Alibris management team learned that it was being investigated by federal law enforcement authorities for the subject-matter of the Warchut-Krotkov false story -- that is, that Councilman had directed Warchut and Krotkov to illegally intercept Amazon.com e-mails intended for Interloc customers;" that "Alibris management believed that it was in the company's best interest to cooperate with the federal investigation;" and that "Alibris understood that the more it cooperated with the federal investigation, the less severe its criminal liability and penalty would be." |
| **Page 14:**  "It is reasonable to infer that Warchut understood that the investigation jeopardized Alibris' prospects of wooing Amazon.com and outside investors.  As an employee of a growing technology company (in 1998), Warchut understood that his interests were tied to Alibris' prospects.  It is also reasonable to infer that Warchut understood that he had a duty to cooperate with an investigation of matters that had occurred "on his watch," on the very Alibris computer system he was in charge of administering.....As Alibris' computer systems administrator, Warchut had the authority (indeed, the obligation) to talk to government investigators about hacker attacks that had originated in Alibris' computers.  Warchut had the authority to attempt to protect his employer from the adverse consequences that such an investigation could cause." | The complaint alleges that Warchut lied to investigators to protect himself from the consequences of an investigation that he knew was focused from the outset on his possibly illegal activities.  The complaint does not allege, and it could not reasonably be inferred based on the allegations in the complaint, that Warchut offered up plaintiff, a member of Alibris' Board of Directors and its senior management team, to protect Alibris' interests in a criminal investigation. |

| **Page 17:** "Alibris was well aware that Warchut's and Krotkov's Amazon.com story had caused investigators to start investigating Councilman." | This is not alleged in the complaint. |
| --- | --- |
| "...Alibris assisted Warchut in fueling the criminal investigation of Councilman...by joining Warchut in falsely implicating Councilman." | The complaint does not allege that Alibris provided any information (false or otherwise) to prosecutors or investigators about plaintiff's activities. |
| Alibris "actively participated in building the false case against Councilman." | The complaint does not allege that Alibris "actively participated" in building a false case against plaintiff. The complaint does not allege that anyone employed by Alibris other than Warchut provided information that incriminated plaintiff. |

301628