```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS


BRADFORD C. COUNCILMAN,    )
          Plaintiff        )
                           )
          v.               )  CIVIL ACTION NO. 04-30208-MAP
                           )
ALIBRIS, INC.,             )
MICHAEL WARCHUT,           )
PETER KROTKOV,             )
          Defendants       )
```

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Docket Nos. 11, 13, & 18)

September 13, 2005

PONSOR, U.S.D.J.

I. INTRODUCTION

Bradford C. Councilman ("plaintiff") has filed a four-count complaint against defendants Alibris, Inc. ("Alibris"), Michael Warchut ("Warchut"), and Peter Krotkov ("Krotkov"), claiming that the defendants are liable to him for malicious prosecution (Count I), abuse of process (Count II), and intentional infliction of emotional distress (Count III). An additional claim that Alibris violated the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A, has been dismissed by agreement of the plaintiff.

II. FACTUAL AND PROCEDURAL BACKGROUND

In 1993, the plaintiff co-founded Interloc, an online service for rare and out-of-print book dealers. Interloc

also operated an Internet Service Provider ("ISP") for subscribers who were members of the general public. The plaintiff oversaw operations at Interloc's Greenfield, Massachusetts data center.

In May of 1998, Interloc merged with, and adopted the name of, Alibris, Inc., an internet company for buyers and sellers of new, used and rare books, music and movies. After the merger, the plaintiff became Alibris' vice president and a member of its Board of Directors. Defendant Michael Warchut, formerly Interloc's systems administrator, became the systems administrator for Alibris after the merger. Defendant Peter Krotkov was employed at Interloc for only one week prior to the merger with Alibris. At all other pertinent times, Krotkov was employed by the University of Massachusetts as a systems administrator.

This case stems from federal and state investigations into two incidents of computer hacking that led to the return of indictments against the plaintiff and Alibris. The first charged incident occurred in March of 1998 when Warchut, then employed by Interloc, obtained unauthorized access to password-protected data in the computer system of an entity known as Studio 32. Studio 32 is a software development company that was hired by Interloc to design its website and servers. The plaintiff claims Warchut lied to

him by saying he gained access to Studio 32's confidential data legally. Relying on this false representation, the plaintiff instructed Warchut to gain access again to Studio 32's confidential data. Studio 32 uncovered the March 1998 invasion of its system and reported the incident to authorities.

The second charged incident occurred in April of 1998 when Warchut, with the assistance of Krotkov, obtained unauthorized access into the computers of an entity called Shaysnet. This incident resulted in the destruction of files and the theft of a Shaysnet password file. David Leonard, the director of Shaysnet, notified the Massachusetts State Police about the intrusion on April 10, 1998 and authorities began investigating immediately thereafter.

The plaintiff alleges that during the investigation, Warchut and Krotkov, in return for favorable treatment by authorities for their own wrongdoing, gave false statements to investigators that implicated the plaintiff. Warchut and Krotkov told police that the plaintiff ordered them to write a computer script to intercept and improperly copy certain e-mails. Furthermore, Warchut claimed that his incursion into Studio 32's system was by the instruction of the plaintiff. As a result, investigators broadened their

-3-

investigation to include the plaintiff.

Alibris only became aware of the criminal investigation on or about June 8, 1998, a few weeks after the merger with Interloc. In late July, Alibris management requested and received the plaintiff's resignation from the Board of Directors; the company terminated his employment on October 21, 1999. Alibris pled guilty to charges relating to the illegal interception of e-mails and paid a $250,000 fine. On May 31, 2000, Warchut pled guilty to one count of conspiracy to violate laws prohibiting interception of electronic messages and was sentenced to two years probation and fined $2,100.

On July 11, 2001, the plaintiff was indicted on two counts. The first count alleged illegal interception of e-mails and charged plaintiff under 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. §§ 2511 et seq. (the "Federal Wiretap Act"). The second count was related to the Studio 32 incident and charged the plaintiff under 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. §§ 1030 et seq. (the "Computer Fraud and Abuse Act").

This court dismissed Count I on February 12, 2003, finding that the e-mails at issue were not "intercepted" in transit as required to prove a violation of the Federal Wiretap Act. U.S. v. Councilman, 245 F. Supp. 2d 319 (D.

Mass. 2003). Prosecutors voluntarily dismissed Count II of the indictment on June 16, 2003, citing recent developments in the relevant case law.

On June 29, 2004, a panel of the Court of Appeals affirmed the dismissal of the Wiretap Act claim in Count I. <u>U.S. v. Councilman</u>, 373 F.3d 197 (1st Cir. 2004)

On October 5, 2004, the United States Court of Appeals allowed the government's petition for rehearing <u>en banc</u> regarding the dismissal of Count I of the indictment. At the time of argument on this Motion to Dismiss, counsel was awaiting the <u>en banc</u> decision. On August 11, 2005, the First Circuit, sitting <u>en banc</u>, vacated the panel decision and reversed the dismissal of Count I of the criminal indictment against plaintiff. <u>U.S. v. Councilman</u>, 418 F.3d 67 (1st Cir. 2005). The Court of Appeals' action on the criminal case against the plaintiff will not affect the logic of this court's ruling on the defendants' Motion to Dismiss in this civil case.

### III. <u>STANDARD OF REVIEW</u>

In reviewing a motion to dismiss under Rule 12(b)(6), a court is generally required to "(1) treat all of the non-movant's factual allegations as true and (2) draw all reasonable factual inferences that arise from the allegations and are favorable to the non-movant." <u>Eggert v.</u>

Merrimac Paper Co. Leveraged Employee Stock Ownership Plan & Trust, 311 F. Supp. 2d 245, 247 (D. Mass. 2004) (quoting Burchill v. Unumprovident Corp., No. 03-67-P-S, 2003 WL 21524730, at *1 (D. Me. June 27, 2003)).  Dismissal is not proper unless it is clear that the plaintiff has not offered any supportable claim.  Fletcher v. Tufts Univ., 367 F. Supp. 2d 99, 103-04 (D. Mass. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## IV. DISCUSSION

All three claims remaining in this case collapse in the face of one undisputed fact, established on the face of the complaint: law enforcement officers had initiated an investigation into the underlying criminal activity before they ever contacted the defendants.  Defendants never "initiated" any criminal prosecution of the plaintiff, and their conduct in providing information in response to law enforcement inquiries was privileged.

Massachusetts law applies in this diversity action.  The Commonwealth's Supreme Judicial Court has held that while a person need not actually swear out a criminal complaint in order to be held answerable for malicious prosecution, he "must have, in some sense, initiated the prosecution." Correllas v. Viveiros, 410 Mass. 314, 318 (1991).  Correllas involved a bank teller who was a suspect in a larceny and

who gave false information implicating a co-worker. The SJC held that, even assuming for purposes of the motion that the allegations against Viveiros were true, a claim for malicious prosecution would not lie.

> The mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution.

Id.

Despite resourceful and vigorous efforts by plaintiff's counsel, this holding presents an unavoidable bar to all of the plaintiff's claims here. The fact that in this case, as in Correllas, a criminal investigation of the criminal conduct was "well under way, and a prosecution was being contemplated," id., at 324, when the defendants made their statements ends the analysis. Dismissal is mandated as to all three tort claims. A privilege protecting an individual who gives information to law enforcement agents conducting an investigation from a claim of malicious prosecution "would be of little value if the individual were subject to liability under a different theory of tort." Id.

Plaintiff contends that the defendants may be deemed to have "initiated" the prosecution against the plaintiff because a jury might find that, at the time the defendants were contacted by law enforcement, the inquiry was not

actively directed at the plaintiff.  Thus, the contention goes, the defendants' false incriminatory statements to authorities constituted, in a sense, the commencement or "initiation" of the charges against Councilman specifically. This argument is unpersuasive.  Placing this limitation on the <u>Correllas</u> holding would effectively negate the protections so emphatically recognized in that decision.  If plaintiff's logic were approved, citizens responding to law enforcement inquiries by suggesting the possible guilt of another party, or even mentioning another party, would be exposing themselves to later civil claims by the parties whose names they happened to mention. <u>Correllas</u> rejects precisely this notion.

    The distinction drawn by <u>Correllas</u> is admittedly somewhat capricious.  A person who approaches police, or who seeks issuance of a criminal complaint, with the result that a prosecution begins against an individual based on deliberate lies, may be held liable civilly.  On the other hand, a person who is approached by police and, in response to questions, utters the same lies with the result that the investigation takes a new direction and an innocent person is prosecuted, is immune from liability in tort for his false statements.  The arbitrariness of the law in this area may be another example of the apothegm of Oliver Wendell

-8-

Holmes, Jr. to the effect that "the life of the law has not been logic: it has been experience." Oliver Wendell Holmes, Jr., The Common Law 1 (Little, Brown & Co. 1990)(1881). At any rate, the SJC has manifestly chosen to balance the availability of legal redress for false statements against law enforcement's need to encourage open communications -- free of concerns about lawsuits -- in the manner set forth in Correllas. Its holding binds this court.

Because of the fatal impact of Correllas, it is unnecessary for the court to address defendants' other powerful argument based on the statute of limitations. Along the same lines, the court will merely note that the malicious prosecution claim would be, at best, untimely, since, given the First Circuit's en banc decision in plaintiff's parallel criminal case, it cannot be said at this time that the prosecution has terminated in favor of the plaintiff.

## V. CONCLUSION

For the reasons set forth above, the defendants' Motions to Dismiss (Docket Nos. 11, 13 & 18) are hereby ALLOWED. The clerk is ordered to enter judgment for the defendants on all counts. This case may now be closed.

It is So Ordered.

```
                              /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              U. S. District Judge
```